1
2
3
4
5
6
7
8
9
10

# <u>EMERGENCY MOTION</u>

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  HOLLY E. ESTES, ESQ.
   Nevada Bar No. 11797
2  ESTES LAW
   605 Forest Street
3  Reno, Nevada  89509
   Telephone (775) 321-1333
4  Facsimile (775) 321-1314
   ***Email: hestes@esteslawpc.com***
5
   Attorney for Paul and Evy Paye, LLC
6

7                UNITED STATES BANKRUPTCY APPELLATE PANEL
8                        OF THE NINTH CIRCUIT
9                              —ooOoo—
10
   In Re:                              Case No. BK-N-16-51282-GWZ
11                                     Chapter 11
   NEW CAL-NEVA LODGE, LLC,
12                                     Appeal Reference No. 17-50
          Debtor.
13                                     BAP No. NV-17-1307
   _____/
14
   PAUL   AND   EVY   PAYE,   LLC,   a
15 California limited liability company,   **EMERGENCY MOTION FOR STAY
                                          PENDING APPEAL**
16          Appellant.

17 v.

18
   LAWERENCE   INVESTMENTS,   LLC;
19 THE   OFFICIAL   COMMITTEE   OF
   UNSECURED CREDITORS; NEW CAL
20 NEVA   LODGE,   LLC;   CR   LAKE
   TAHOE, LLC; 9898 LAKE, LLC,
21
          Appellees.
22 _____/

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

EMERGENCY MOTION FOR STAY PENDING APPEAL. . . . . . . . . . . . . . . . 7

POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL BASIS FOR RELIEF REQUESTED. . . . . . . . . . . . . . . . . . . . . . . . . 14

      Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      Review of Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

1.    The Issues On Appeal Are Serious And Substantial, And It Is Probable

       that Paye Will Succeed On The Merits. . . . . . . . . . . . . . . . . . . . . . . . . . 17

       (A)    The Plan Fails §1129(a)(3) Requirement. . . . . . . . . . . . . . . . . . . 18

       (B)    The Plan Fails §1123(a)(5) Requirement. . . . . . . . . . . . . . . . . . . 22

       (C)    The Plan Causes a Fraudulent Transfer of the Fairwinds Estate

              and Provides Immunity to the People Effectuating the Fraudulent

              Transfer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

       (D)    The Transfer of the Fairwinds Estate is a Fraudulent Transfer

              that the Court cannot Exonerate. . . . . . . . . . . . . . . . . . . . . . . . . . 22

       (E)    Jurisdiction and Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

2.    Paye Will Be Irreparably Injured If The

       Order Is Not Stayed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

3.    Other Interested Parties Will Not Be Harmed

       As A Result Of The Stay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

4.    A Stay Will Not Harm The Public Interest. . . . . . . . . . . . . . . . . . . . . . . 31

5.    Paye Should Not Be Required to Post A Bond. . . . . . . . . . . . . . . . . . . . 31

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**TABLE OF AUTHORITIES**

**Page**

**STATUTES**

11 U.S.C. § 1129. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17, 19

11 U.S.C. § 1129(a)(3).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

11 U.S.C. § 1129(a)(5).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cal. Civ. Code § 3387... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Cal. Civ. Code § 3439 et seq... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cal Corp Code Article 7 Dissolution and Winding
Up §17707.04 through 17707.06.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Delaware Code, Title 6, §18-201 through §18-216.. . . . . . . . . . . . . . . . . . . . . . 19

Delaware Code, Title 6, §18-804 Distribution of Assets.. . . . . . . . . . . . . . . . . . . 21

**RULES**

Fed R. App. P. 8(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14, 33

Fed. R. Bankr. P. 7062.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13, 14, 31

Fed. R. Bankr. P. 8007. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14, 15

Fed. R. Bankr. P. 9014.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 62. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

**CASES**

In re Capital West Investors, 180 B.R. 240 (N.D. Cal. 1995); 186 B.R. 497 (N.D. Cal.
1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Dillon v. City of Chicago, 866 F.2d 902 (7th Cir. 1988).. . . . . . . . . . . . . . . . . . . 32

United States v. Boyce, 148 F. 2d 1069, 1096 (S.D. Cal 2001) . . . . . . . . . . . . . . . 32

Chalk v. U.S. District Court Cent. Dist. Of Cal., 840 F.2d 701 (9th Cir. 1988). . . . . . . 28

Economy Refining & Service Co. v. Royal Nat'l Bank,(1971) 20 Cal. App. 3d 434. . . . 24

In re Fullmer, 323 B.R. 287 (Bankr. D. Nev. 2005). . . . . . . . . . . . . . . . . . . . . . 32

Bank of Lake Tahoe v. Bank of America, 318 F.3d 914 (9th Cir. 2003). . . . . . . . . . . 27

Amphenol v. Shandler (In re Insilco Technologies, Inc.), 351 B.R. 313 (Bankr. D. Del

2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Mehrtash v. Mehrtash (2001) 93 Cal. App. 4th 75. . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Countrywide Home Loans, Inc. v. Wilkerson (In re O'Kelley), 2010 U.S. Dist. LEXIS

108096 (D. Hawaii, October 8, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Dynamic Fin. Corp. v. Kipperman (In re North Plaza, LLC),

395 B.R. 113, 120 (S.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Golden Gate Rest Ass'n v. City & County of San Francisco,

512 F.3d 1112 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Hebert v. Exxon Corp., 953 F.2d 936, 938 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . 32

Humane Soc'y of U.S. v. Gutierrea, 523 F.3d 990 (9th Cir. 2008). . . . . . . . . . . . . . . 15

In re Adelphia Comm. Corp., 361 B.R. 337, 348 (S.D.N.Y. 2007). . . . . . . . . . . . . . . . 27

In re Country Squire, 203 B.R.182, 183 (B.A.P. 2nd Cir. 1996). . . . . . . . . . . . . . . . . . 27

In re Stadium Management Corp., 95 B.R. 264 (Bankr. D. Mass 1988). . . . . . . . . . . . 31

In re Monroe Well Service, Inc., 67 B.R. 746 (Bankr. E.D. Pa. 1986). . . . . . . . . . . . . . 31

In re PTI Holding Corp., 346 B.R. 820, 827 (Bankr. D. Nev. 2006). . . . . . . . . . . . . 27, 31

In re Landau Boat Co., 13 Bankr. 788 (Bankr. W.D. Mo. 1981). . . . . . . . . . . . . . . . . 18

In re Koelbl, 751 F.2d 137 (2d Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Orange County Nursery, 2012 U.S.Dist. LEXIS 52482
(C.D. Cal. April 13, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Red Mountain Machinery Co., 451 B.R. 897 (Bankr. D. Ariz. 2011). . . . . . . . . . 16

In re Smith, 397 B.R. 134 (Bankr. D. Nev. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Station Casinos, Inc., 2010 Bankr. LEXIS 5438. . . . . . . . . . . . . . . . . . . . . . . 15, 27

In re Victory Constr. Co., Inc., 37 B.R. 222 (9th Cir. BAP 1984). . . . . . . . . . . . . . . . . 30

In re Woodcraft Studios, Inc., 2012 U.S. Dist. LEXIS 5647

(N.D. Cal., January 18, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Zaleha, 162 B.R. 309 (Bankr. D. Idaho 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Filip v. Bucurenciu (2005) 129 Cal. App. 4th 825. . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Kreisler v. Goldberg, 478 F.3d 209, (4th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 20

Erie R.R. v. Tompkins, 304 U.S. 64 (1938). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

ESTES LAW
605 Forest Street
Reno, Nevada 89509
(775) 321-1333

Warth v. Seldin, 422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Barrows v. Jackson, 346 U.S. 249 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56 (4th Cir.1993). . . . . . . . . . . . . . . . . . . . . . . 19

Schlesinger v. Reservists to Stop the War, 418 U.S. 208, 221-227 (1974). . . . . . . . . . . . 26

Turner v. Turner, 147 Md.App. 350, 809 A.2d 18, 61 (Md.Ct.Spec.App.2002) . . . . . . . 19

United States v. Richardson, 418 U.S. 166, 188-197 (1974). . . . . . . . . . . . . . . . . . . . . . 26

Lynch v. Cal. PUC, No C-04-0580 VRW, 2004 U.S. Dist. LEXIS 6002

(N.D. Cal. April 9, 2044). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

North Plaza, LLC v. Kipperman (In re North Plaza, LLC), 395 B.R. 113 (S.D. Cal.

2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ohanian v. Irwin (In re Ohanian), 338 B.R. 839 (E.D. Cal. 2006). . . . . . . . . . . . . . . . . 15

Olympia Leasing Equip. Co. v. Western Union Tel. Co., 786 F.2d 794 (7th Cir. 1986). 32

Int'l Telemeter, Corp. v. Hamlin Int'l Corp., 754 F.2d 1492 (9th Cir. 1985). . . . . . . . . 32

Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3rd Cir. 1992). . . . . . . . . . . . . 28

Real Estate Analytics, LLC v. Vallas, 160 Cal. App. 4th 463 (2008). . . . . . . . . . . . . 28, 29

Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12 (1st Cir. 1996). . . . . . . . 28

Terry v. Yancey, 344 F.2d 789 (4th Cir.1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Townsend v.Holman Consulting Corp., 929 F.2d 1359 (9th Cir. 1991). . . . . . . . . . . . . 32

Vacation Village, Inc. v. Clark County, Nev., 497 F.3d 902 (9th Cir. 2007) . . . . . . . . . 29

Winter v. National Resources Defense Council, 129 S. Ct. 365 (2008). . . . . . . . 16, 17, 31

Wymer v. Wymer (In re Wymer), 5 B.R. 802 (B.A.P. 9th Cir. 1980). . . . . . . . . . . . 15, 17

**SECONDARY SOURCES**

5 Collier on Bankruptcy para. 1129.02, at 1129-13 (15th ed. 1984) . . . . . . . . . . . . . . . 18

Thompson & Sebert, Remedies: Damages, Equity and Restitution (2d ed.
1989) pp. 885–886. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Rest.2d Contracts, § 360. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## EMERGENCY MOTION FOR STAY PENDING APPEAL

Paul and Evy Paye, LLC, a California limited liability company ("Paye") by and through its counsel, Holly E. Estes, Esq., of ESTES LAW, hereby moves this Court for an emergency order staying enforcement of the Findings of Fact and Conclusions of Law in Support of Order Confirming First Amended Plan of Liquidation For New Cal-Neva Lodge, LLC Jointly Proposed By Lawrence Investments, LLC And The Official Committee of Unsecured Creditors Dated August 16, 2017 [DE 965] (the "Findings of Fact and Conclusions of Law ") entered on October 16, 2017, the Order Confirming First Amended Plan of Liquidation For New Cal-Neva Lodge, LLC, Jointly Proposed By Lawrence Investments, LLC And The Official Committee of Unsecured Creditors Dated August 16, 2017 [DE 966] entered on October 16, 2017, as amended by the Order Conditionally Granting Motion To Approve Non-Material Plan Modification [DE 967] entered on October 16, 2017 (together the "Order") during the pendency of the appeal from the Order. This Motion is made pursuant to Rules 7062, 8007 and 9014(c) of the Federal Rules of Bankruptcy Procedure, Federal Rule of Appellate Procedure 8(a), and is based upon the points and authorities set forth below, the pleadings and papers on file in this case, of which judicial notice is respectfully requested pursuant to Federal Rule of Evidence 201, and such other matters and argument as may be presented at the hearing hereon. The seven (7) day stay of the Order Confirming First Amended Plan of Liquidation For New Cal-Neva Lodge, LLC, Jointly Proposed By Lawrence Investments, LLC And The Official Committee of Unsecured Creditors Dated August 16, 2017 [DE 966] was set to expire on October 23, 2017, but the bankruptcy court granted an additional two day stay of that order in order for the Appellant to seek a stay from the appellate court. The stay of that order is now set to expire on October 25, 2017 at 5:00 p.m.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.    RELEVANT FACTS

1.    The debtor in the above captioned bankruptcy case is New Cal-Neva Lodge,

1  LLC, a Nevada limited liability company (the "Debtor").  The Debtor filed its Chapter 11

2  petition on July 28, 2016 [DE 1].

3  2.  The sole member of the Debtor is Cal-Neva Lodge, LLC, a Nevada limited

4  liability company ("Cal Neva").  *See* First Amended Plan of Liquidation For New Cal

5  Neva Lodge, LLC Jointly Proposed by Lawrence Investments, LLC, and the Official

6  Committee of Unsecured Creditors Dated August 16, 2017 [DE 803], pg. 1.  Cal Neva

7  has also filed a petition for bankruptcy relief and has a case currently pending as Case No.

8  16-51281 in the United States Bankruptcy Court District of Nevada.  *Id.*

9  3.  A motion for substantive consolidation was filed with regard to the two

10  debtor entities (Debtor and Cal Neva)[DE 842], but was denied by the Order Denying Cal

11  Neva Lodge, LLC's Motion for Order of Substantive Consolidation [DE 918] entered on

12  September 18, 2017.

13  4.  On August 21, 2017, the Official Committee of Unsecured Creditors and

14  Lawrence Investments, LLC (hereinafter the "Plan Proponents"), filed their jointly

15  proposed First Amended Plan of Liquidation for New Cal Neva Lodge, LLC, Dated

16  August 16, 2017 [DE 803], and their Addendum to First Amended Plan of Liquidation for

17  New Cal Neva Lodge, LLC Jointly Proposed By Lawrence Investments, LLC and the

18  Official Committee of Unsecured Creditors Dated August 16, 2017 [DE 806] (together

19  the "Plan").

20  5.  The Plan, Jointly Proposed By Lawrence Investments, LLC ("Lawrence")

21  and the Official Committee of Unsecured Creditors ("OCUC") mentions two other non-

22  debtor entities: CR Lake Tahoe, LLC, a Delaware limited liability company ("CR

23  Tahoe") and 9898 Lake, LLC, a California limited liability company ("9898 Lake").  The

24  Plan also mentions a real property asset of 9898 Lake, the Fairwinds Estate, which is not

25  property of the Debtor's bankruptcy case estate.  The Plan sought to sell the Debtor's real

26  property the Cal Neva Resort, Spa & Casino, located at 2 Stateline Road, Crystal Bay,

27  Nevada, and 9898 Lake's real property, the Fairwinds Estate, free and clear of all liens

28  claims and interests to Lawrence or its assignee.  *See generally* the Plan.

6. The Debtor is the sole member of its non-debtor subsidiary CR Tahoe, and CR Tahoe is the alleged sole member of 9898 Lake. Plan, pg. 6 and pg. 11.

7. 9898 Lake, the non-debtor subsidiary of the non-debtor subsidiary of the Debtor, is the owner of the real property and improvements located at 9898 Lake Street, Kings Beach, California (the "Fairwinds Estate"). Plan, pg. 6.

8. On September 11, 2017, Paul and Evy Paye, LLC (hereinafter "Paye") filed its Objection to First Amended Plan of Liquidation for New Cal Neva Lodge, LLC Jointly Proposed By Lawrence Investments, LLC and the Official Committee of Unsecured Creditors Dated August 16, 2017 [DE 883] (the "Plan Objection").

9. On September 12, 2017, Paye filed the Declaration of John Paye in Support of Objection to First Amended Plan of Liquidation for New Cal Neva Lodge, LLC Jointly Proposed By Lawrence Investments, LLC and the Official Committee of Unsecured Creditors Dated August 16, 2017 [DE 891] (the "Declaration in Support of Plan Objection").

10. In its Plan Objection and Declaration in Support of Plan Objection Paye asserted that it had claims against CR Tahoe, 9898 Lake and the Fairwinds Estate pursuant to an Exchange Agreement dated October 26, 2014, executed by Paye, 9898 Lake, LLC, CR Lake Tahoe, LLC, and Cal Neva Lodge, LLC, but **not** the Debtor, New Cal Neva Lodge, LLC.

11. On September 26, 2017, Capital One, N.A., caused its trustee under its first priority deed of trust to record a Notice of Default with the Placer County Recorders Office against the Fairwinds Estate.

12. On September 26, 2017, the Plan Proponents filed their Motion to Approve Non-Material Plan Modification [DE 924] ("Motion to Modify"). In their Motion to Modify, the Plan Proponents sought a material modification to the Plan to include a wholesale exculpation of previously undisclosed parties under the guise that it was to effectuate their Plan, when really, they were seeking to exonerate the Debtor's principals for executing the fraudulent transfer of the Fairwinds Estate. Again, the Fairwinds Estate

1    is not property of the bankruptcy case estate, and the owner of the Fairwinds Estate is not

2    the Debtor.

3            13.     On October 1, 2017, Paye filed its Objection to the Motion to Approve

4    Non-Material Plan Modification [DE 948], and on October 3, 2017, Paye filed the

5    Declaration of John Paye in Support of its Objection to the Motion to Approve Non-

6    Material Plan Modification [DE 953].

7            14.     On October 6, 2017, Paye commenced an adversary proceeding in the Cal

8    Neva Lodge, LLC, bankruptcy case against the parties to the Exchange Agreement to

9    enforce its rights.  That case is pending in the United States Bankruptcy Court District of

10   Nevada as case number 17-05040.

11           15.     On October 6, 2017, Paye filed a notice of the pending adversary

12   proceeding in the above captioned bankruptcy case to give notice of the pending action

13   [DE 957].

14           16.     On October 16, 2017, the Court entered its Order Confirming First

15   Amended Plan of Liquidation For New Cal-Neva Lodge, LLC Jointly Proposed By

16   Lawrence Investments, LLC And The Official Committee of Unsecured Creditors Dated

17   August 16, 2017 [DE 966]; Findings of Fact and Conclusions of Law in Support of Order

18   Confirming First Amended Plan of Liquidation For New Cal-Neva Lodge, LLC Jointly

19   Proposed By Lawrence Investments, LLC And The Official Committee of Unsecured

20   Creditors Dated August 16, 2017 [DE 965]; and its Order Conditionally Granting Motion

21   To Approve Non-Material Plan Modification [DE 967] entered on October 16, 2017.

22           17.     On October 18, 2017, Paye filed its Notice of Appeal [DE 971].

23           At the plan confirmation hearing the Court did not determine Paye's rights arising

24   from the Exchange Agreement nor did it make a determination as to Paye's potential

25   claims against Cal Neva, CR Tahoe, 9898 Lake and the Fairwinds Estate, as those matters

26   were not before the Court.  Further, the Plan was filed in the above captioned Debtor's

27   bankruptcy case, and the Debtor is not a party to the Exchange Agreement, nor a party

28   who has rights that stem from the Exchange Agreement.  Accordingly, the Court did not

1   have authority to approve the sale of non-estate property owned by a non-debtor non-

2   party to the above captioned bankruptcy case, free and clear of all liens claims and

3   interest, when the owner of the property to be sold and its creditors did not have notice of

4   the Plan or the Plan confirmation hearing.

5        Despite not having made any determination of Paye's rights or causes of action,

6   the Court did consider the briefs filed and the arguments of counsel at the Plan

7   confirmation hearing and the hearing on the Motion to Modify.  The Court ultimately

8   confirmed the Plan which included the sale of the Fairwinds Estate real property which is

9   wholly owned by 9898 Lake, a non-party non-debtor entity, to be sold as one of the

10   Debtor's bankruptcy case estate's "Purchased Assets[1]" free and clear of all liens, claims

11   and interests.

12        In its Findings of Fact and Conclusions of Law the Court found that, "...regardless

13   of any claims that Paye may have [against any non-party non-debtor subsidiary of the

14   Debtor] in connection with the Fairwinds Estate and/or the Exchange Agreement, the

15   transfer of the Fairwinds Estate to the Buyer as provided for under the Plan is fair and

16   permissible under the Bankruptcy Code because the Buyer is paying the [Debtor's] Estate

17   the $35.8 million Purchase Price on account of all of the Purchased Assets, and those

18   assets specifically include the Debtor's ultimate equity interest in the Fairwinds Estate."

19   *See* Findings of Fact and Conclusions of Law, pg. 20, ¶ g.  At the confirmation hearing

20   Mr. Haratani, the vice president of Lawrence, testified that there is no specific value out

21   of the purchase price attributed to the Fairwinds Estate, and that there is no intention for

22   9898 Lake to receive any of the Plan sale proceeds.  Hearing Transcript pg. 105, ln 9-15;

23   pg. 115-116.

24        Among other things the Plan provides for the transfer of the sole asset of 9898

25   Lake for the benefit of the Debtor, the owner of CR Tahoe, which owns 9898 Lake, and

26   would strip 9898 Lake of any assets and therefore preclude Paye from having any

27   effective remedy for its claims against CR Tahoe, 9898 Lake or the Fairwinds Estate in its

28

---

[1] Capitalized terms not defined herein shall have the meaning defined in the Plan.

adversary proceeding.

Additionally, the Plan provides that certain causes of action and defenses including those related to "Claims arising out of that certain Exchange Agreement concerning the Fairwinds Estate" (the "Retained Causes of Action") shall be sold to and become the property of the Buyer or shall become property of the Litigation Trust.

Also, the Plan provides that "Any Claims arising from the rejection of an executory contract or unexpired lease not filed [by the Claims Bar Date] will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, Buyer, the Proponents, or their assets or properties (including the Real Property and the Fairwinds Estate) without the need for any objection by the Debtor or Buyer, or further notice to, or action, order or approval of the Bankruptcy Court."

Further, the Plan provides that "after entry of the Confirmation Order, the Plan authorizes and directs [CR Tahoe] to dissolve, if necessary, and cause 9898 Lake to Transfer by grant deed all of 9898 Lake's right, title and interest in the Fairwinds Estate to the Debtor, subject to the Secured Claim of Capital One. On the Effective Date and as part of the Closing, the Debtor shall transfer the Fairwinds Estate to the Buyer free and clear of all Liens and Claims other than the Secured Claim of Capital One, which shall be treated in accordance with Article IV.B.5 hereof."

Despite the arguments of Paye, the Court confirmed the Plan. Paye's objections to the Plan and the Motion to Modify were generally as follows: 1) Plan did not meeting the requirements of 11 U.S.C. §1129; 2) that the Plan Proponents and the Debtor did not have standing to modify Paye's rights with regard to non-debtor non-party entities, nor did they have standing to modify Paye's rights with regard to the real property owned by the non-debtor non-party subsidiary of the subsidiary of the Debtor; 3) that the Court did not have authority to authorize a plan that would effectuate a fraudulent transfer of the Fairwinds Estate and provide immunity to the people effectuating the fraudulent transfer; 4) that Paye is not a creditor of the Debtor, but that Paye appeared at the confirmation hearing in order to stop the Plan Proponents from modifying Paye's rights to non-debtor

1   non-party entities and those entities assets; 5) that Cal Neva, New Cal Neva, CR Tahoe

2   and 9898 Lake are all separate legal entities with their own debts and assets, even when

3   such corporation is wholly owned by another corporate entity; 6) that the Fairwinds Estate

4   cannot be sold with bankruptcy benefits such as being sold free and clear of all liens,

5   claims, and interest when its owner is not a bankrupt; 7) that it was unclear if there are

6   other creditors of the non-debtors or parties in interest that exist which may require notice

7   of such a sale which would cancel their liens, claims or interest with regard to those non-

8   debtor entities and those entities assets; and 8) that the dissolution of CR Tahoe and 9898

9   Lake contemplated by the Plan was not consistent with the laws of the States of

10  California and Delaware that govern the winding up of 9898 Lake and CR Tahoe

11  respectively.

12          Pursuant to the Order the bankruptcy court shortened the fourteen (14) day stay

13  imposed by Bankruptcy Rules 6004(h), 6006(d) and 7062 to seven (7) days.

14          On October 19, 2017, Paye filed its Emergency Motion for Stay Pending Appeal

15  [DE 992] (the "Motion for Stay") with the bankruptcy court.  Along with the Motion for

16  Stay, Paye filed the Declaration of John Paye in Support of the Motion for Stay Pending

17  Appeal [DE 1000].

18          At the hearing on the Motion for Stay held on October 20, 2017, the bankruptcy

19  court considered the arguments of the parties in opposition to the Motion for Stay, and the

20  arguments of Paye in support.  The bankruptcy judge granted a limited stay to Paye

21  through October 25, 2017 at 5:00 p.m. without bond, but denied Paye's Motion for Stay

22  because the bankruptcy court did not hear anything that would cause it to reconsider its

23  Findings of Fact and Conclusions of Law.  The bankruptcy court believed Paye had a

24  strong argument, but was not persuaded Paye's arguments rose to a strong level of likely

25  success.  Further the bankruptcy court did not find mootness alone was an irreparable

26  injury.   Further, the bankruptcy court determined that the creditors of the Debtor's

27  bankruptcy case estate would be harmed because they would not receive any money today

28  and there is no indication that another buyer exists.  The bankruptcy court found that there

1  was a public interest in maximizing the value of the Debtor's bankruptcy case estate, and

2  thought that Paye had a possibility of money damages against CR Tahoe, 9898 Lake and

3  the Fairwinds Estate.

4         As discussed below, the issues in this case are serious, substantial, and complex,

5  and could ultimately affect many Chapter 11 bankruptcy cases.   Accordingly, Paye

6  respectfully requests the Court issue a discretionary stay pursuant to Bankruptcy Rule

7  8007 pending  Paye's appeal from this Court's Orders in order to maintain the *status quo*.

8  Specifically, if Paye does not obtain a stay, Paye will lose its right to appeal on account of

9  mootness.  If the Plan is implemented, the appeal will become moot.  Additionally, Paye

10 may lose its rights with regard to the Exchange Agreement and any effective remedies it

11 would otherwise have against CR Tahoe, 9898 Lake and or the Fairwinds Estate real

12 property.   If a stay is not issued, Paye will effectively be left holding an empty bag,

13 despite its viable claims against Cal Neva, CR Tahoe, 9898 Lake and the Fairwinds

14 Estate.  It cannot stand that the Plan in the case of a debtor who has no privity with Paye,

15 could so substantially wipeout Paye's rights and recoveries against non-debtor non-parties

16 and those non-debtor non-parties assets.

17 **B.     LEGAL BASIS FOR RELIEF REQUESTED**

18      **1.     Standard of Review**

19        Rule 8007 of the Federal Rules of Bankruptcy Procedure permits a bankruptcy

20 court to grant a discretionary stay pending appeal, and provides:

21          A motion for a stay of the judgment, order, or decree of a bankruptcy judge,
           for approval of a supersedeas bond, or for other relief pending appeal must
22          ordinarily be presented to the bankruptcy judge in the first instance.
           Notwithstanding Rule 7062 but subject to the power of the district court and
23          the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge
           may suspend or order the continuation of other proceedings in the case
24          under the Code or make any other appropriate order during the pendency of
           an appeal on such terms as will protect the rights of all parties in interest. . .
25          .

26 In re Zaleha, 162 B.R. 309, 317 (Bankr. D. Idaho 1993).  Appellate Rule 8(a) states that a

27 motion for stay may be made to the court of appeals if the motion was first brought before

28 the bankruptcy court and was denied.

1    Where the bankruptcy court has already denied a stay under Federal Rule of

2 Bankruptcy Procedure 8005, the appellate court's review is limited to a determination as

3 to whether the bankruptcy court abused its discretion.  Wymer v. Wymer (In re Wymer), 5

4 B.R. 802 (B.A.P. 9th Cir. 1980); Ohanian v. Irwin (In re Ohanian), 338 B.R. 839, 844

5 (E.D. Cal. 2006); North Plaza, LLC., v. Kipperman (In re North Plaza, LLC), 395 B.R.

6 113, 119 (S.D. Cal. 2008).  The abuse of discretion standard on review of the bankruptcy

7 court's order denying a stay encompasses a *de novo* review of the law, and a clearly

8 erroneous review of the facts.  In re Ohanian, 338 B.R. at 844, 848; In re North Plaza,

9 LLC, 395 B.R. at 119.

10       **2.    Review of Law**

11    Under Rule 8007, an appellant seeking a stay pending appeal must essentially meet

12 a test akin to that used for preliminary injunctions under Federal Rule of Civil Procedure

13 65. In re Station Casinos, Inc., 2010 Bankr. LEXIS 5438, at *8.   Thus, in order to obtain

14 a discretionary stay pending appeal, the appellant must establish each of the following

15 four elements by a preponderance of the evidence: (1) the appellant is likely to succeed on

16 the merits, (2) the appellant will suffer irreparable injury if the stay is not granted, (3) no

17 substantial harm will come to the appellee as a result of the stay, and (4) the stay will do

18 no harm to the public interest.  Id., at *8; In re Wymer, 5 B.R. 802, 806 (9th Cir. 1980);

19 Countrywide Home Loans, Inc. v. Wilkerson (In re O'Kelley), 2010 U.S. Dist. LEXIS

20 108096 (D. Hawaii, October 8, 2010); In re North Plaza, LLC, 395 B.R. 113, 119 (S.D.

21 Cal. 2008).  The first two factors are the most important.  *See* In re Woodcraft Studios,

22 Inc., 2012 U.S. Dist. LEXIS 5647, *3 (N.D. Cal., January 18, 2012). "[T]he issues of

23 likelihood of success and irreparable injury represent two points on a sliding scale in

24 which the required degres of irreparable harm increases as the probability of success

25 decreases." In re Orange County Nursery, 2012 U.S. Dist. LEXIS 52482 (C.D. Cal. April

26 13, 2012), *citing* Humane Soc'y of U.S. v. Gutierrez, 523 F.3d 990, 991 (9th Cir. 2008)

27 (*citing* Golden Gate Rest. Ass'n v. City & County of San Francisco, 512 F.3d 1112, 1115

28 (9th Cir. 2008)).

Some courts in this Circuit have applied a test that is more rigorous than that used for preliminary injunctions. *See, e.g.*, Dynamic Fin. Corp. v. Kipperman (In re North Plaza, LLC), 395 B.R. 113, 120 (S.D. Cal. 2008) (rejecting sliding scale approach and holding that "[a]ppellants [must] show that it is more likely than not they will succeed on the merits, whatever the possibility of irreparable injury"); In re Red Mountain Machinery Co., 451 B.R. 897, 900 (Bankr. D. Ariz. 2011) ("[B]oth the Supreme Court and the Ninth Circuit have raised the bar on the showing of irreparable injury, now requiring a showing that 'an irreparable injury is the more probable or likely outcome' if the stay is not granted.") (citing Leiva-Perez, 640 F.3d at 967). Other courts, however, have used the same exact test as that used for preliminary injunctions - i.e., to obtain a stay pending an appeal, an appellant "must show: (1) a likelihood of probable success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits are raised and the balance of the hardships tips sharply in its favor." Lynch v. Cal. PUC, No C-04-0580 VRW, 2004 U.S. Dist. LEXIS 6022, at *6 (N.D. Cal. April 9, 2004).

The Court in Station Casinos, Inc., *supra*, followed the approach taken in In re North Plaza, LLC, and explained:

> The Court rejects the UCC's assertion that a more flexible sliding scale test should be used, balancing a showing of likelihood of success on the merits with the possibility of irreparable injury. In *Winter v. National Resources Defense Council*, the United States Supreme Court made clear that the showing of a possibility of irreparable harm is not sufficient; the party seeking an injunction or stay must demonstrate the likelihood of irreparable harm *and* a likelihood of prevailing on the merits. *Winter v. National Resources Defense Council*, 555 U.S. 7, 129 S. Ct. 365, 375, 172 L. Ed. 2d 249 (2008). Additionally, the sliding scale approach ignores the procedural posture of a stay under Rule 8005, when the movant is appealing a bankruptcy court's final determination on the merits. *In re North Plaza, LLC*, 395 B.R. 113, 120 (S.D. Cal. 2008). As the *North Plaza* court stated, "[a] 'sliding scale' approach, which often results in disproportionately weighting the 'irreparable harm' prong, is appropriate for preliminary injunctions because a court deals with the dispute on first impressions, relies on a less-than-developed factual and legal record, and will ultimately revisit the issue down the road. In contrast, where, as here, a court has taken extensive evidence and briefing an issued a determination on the merits, an interest in finality arises. This finality would be rendered impotent if an enjoined party could always raise the specter of irreparable injury to trump the trial court's order, no matter how unlikely an appellate victory on the merits." *Id.*

The *North Plaza* decision is consistent with the Supreme Court's opinion in

1      Winter, and the Court finds that application of the four-part analysis under
*Wymer* is appropriate for the UCC's Motion for Stay. The four elements
2      are conjunctive and each factor must be shown by a preponderance of the
evidence. *Haskell v. Goldman, Sachs & Co. (In re Genesis Health*
3      *Ventures, Inc.)*, 367 B.R. 516, 519 (Bankr. D. Del. 2007) (motion may be
denied if movant fails to make requisite showing on any single factor).

4

Id., at *8-10. As shown below, Paye has met all four elements.

5

**DISCUSSION**

6

    1.     **The Issues On Appeal Are Serious And Substantial, And It Is Probable**

7

           **that Paye Will Succeed On The Merits**.

8

      Showing a "likelihood of success" requires that the appellant raise questions going

9

to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground

10

for litigation and thus for more deliberate inquiry.  In re North Plaza, LLC, 395 B.R. 113

11

(S.D. Cal. 2008), *citing* County of Alameda v. Weinberger, 520 F.2d 344, 349 n. 12 (9th

12

Cir. 1975).

13

      In the present case, the core issues are:  1) whether the Plan satisfied the

14

requirements of 11 U.S.C. §1129; 2) whether the Plan Proponents had standing to modify

15

Paye's rights with regard to non-debtor non-party entities and those entities real property;

16

3) whether the Court had authority to confirm a plan that would effectuate a fraudulent

17

transfer of the Fairwinds Estate and provide immunity to the people effectuating the

18

fraudulent transfer; 4) whether a bankrupt can collapse non-debtor entities with known

19

creditor claims and shield the assets of those collapsed entities from those entities'

20

creditors; 5) whether the Fairwinds Estate can be sold with bankruptcy benefits such as

21

being sold free and clear of all liens, claims, and interest when the owner of the Fairwinds

22

Estate is not a bankrupt, and the Fairwinds Estate owner entity has not been collapsed into

23

the Debtor in advance of confirmation; 6) Whether the Plan provided adequate notice to

24

those parties whose rights the Plan affects, including the creditors of the non-debtor non-

25

party entities whose assets, but not liablities, are to be collapsed into the Debtor; 7)

26

whether the dissolution of CR Tahoe and 9898 Lake contemplated by the Plan is

27

inconsistent with the laws of the States of California and Delaware that govern the

28

winding up of 9898 Lake and CR Tahoe respectively; and 8) whether the bankruptcy

1    court confirmed a Plan that violated Paye's due process rights.

2              **(A)    The Plan Fails §1129(a)(3) Requirement.**

3              In order for a plan to be confirmed it cannot be proposed by means forbidden by

4    law. "Means forbidden by law" refers inter alia to state law. See In re Landau Boat Co.,

5    13 Bankr. 788, 794 Bankr. W.D. Mo. 1981); In re Koelbl, 751 F.2d 137, (2d Cir. 1984); 5

6    Collier on Bankruptcy para. 1129.02, at 1129-13 (15th ed. 1984) ("Section 1129(a)(3)

7    requires that the proposal of the plan comply with all applicable law, not merely the

8    bankruptcy law.").

9              The Plan provides that the Fairwinds Estate real property which is wholly owned

10   by 9898 Lake will be sold by the Debtor as one of the Debtor's bankruptcy case estate's

11   "Purchased Assets".  As set forth above, the Fairwinds Estate is an asset of 9898 Lake,

12   not the Debtor, and therefore, cannot be sold under the Plan.

13             Additionally, the Plan provides that certain causes of action and defenses including

14   those related to "Claims arising out of that certain Exchange Agreement concerning the

15   Fairwinds Estate" (the "Retained Causes of Action") shall be sold to and become the

16   property of the Buyer if sold or assigned to Buyer under the Asset Purchase Agreement or

17   Buyer's Bid Contract and shall be property of the Litigation Trust if not so sold or

18   assigned.  The Debtor was not a party to the Exchange Agreement concerning the

19   Fairwinds Estate, and therefore cannot sell or confer upon a Buyer or the Litigation Trust

20   that which it does not have.

21             Also, the Plan provides that "Any Claims arising from the rejection of an

22   executory contract or unexpired lease not filed [by the Claims Bar Date] will be

23   automatically disallowed, forever barred from assertion, and shall not be enforceable

24   against the Debtor, Buyer, the Proponents, or their assets or properties (including the Real

25   Property and the Fairwinds Estate) without the need for any objection by the Debtor or

26   Buyer, or further notice to, or action, order or approval of the Bankruptcy Court."  This

27   provision of the Plan seeks to limit a third party's or creditor's right to pursue the

28   Fairwinds Estate, a non Debtor Real Property, even if there is a contractual or other legal

**ESTES LAW**
605 Forest Street
Reno, Nevada  89509
(775) 321-1333                        E:\Cal-Neva Cases\Appeal (Paye)\BAP 17-1307\Mot Stay Pend App\Mot Stay Pending App 102127.wpd

-18-

1   right to do so.  This provision cannot stand.

2         Cal Neva, New Cal Neva, CR Tahoe and 9898 Lake are all separate entities. It is a

3   fundamental precept of corporate law that each corporation is a separate legal entity with

4   its own debts and assets, even when such corporation is wholly owned by another

5   corporate entity.   See Turner v. Turner, 147 Md.App. 350, 809 A.2d 18, 61

6   (Md.Ct.Spec.App.2002) (noting that "[a] corporation is regarded as a separate legal

7   entity"); Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 62 (4th Cir.1993) (noting that

8   Maryland courts generally will not pierce the corporate veil between a parent and a

9   subsidiary corporation if the subsidiary has some independent reason for its existence,

10  other than being under the complete domination and control of another legal entity simply

11  for the purpose of doing its act and bidding" (internal quotation marks omitted)) *see also,*

12  Delaware Code, Title 6, §18-201 through §18-216 ("A limited liability company formed

13  under this chapter shall be a separate legal entity").  9898 Lake does not exist to do CR

14  Tahoe or New Cal-Neva's bidding; it was established to hold title to property.  9898 Lake

15  is a distinct legal entity.   Had CR Tahoe and 9898 Lake wished to receive the protections

16  and benefits afforded by § 1129, they must have filed for bankruptcy.  9898 Lake and CR

17  Tahoe are a limited liability companies under California and Delaware law respectively,

18  and under California and Delaware law, an LLC is treated as a separate legal entity for

19  purposes of liability and property ownership.

20        The Plan is an example of putting the cart before the horse, in that the Plan

21  Proponents sought to sell assets that are not property of the bankruptcy case estate, and

22  they failed to take the necessary legal action to properly acquire those asset in advance of

23  plan confirmation.

24        The Debtor's estate does have an interest in CR Tahoe and this interest in the non-

25  debtor subsidiary corporation does form part of the Debtor's bankruptcy estate.  *See , e.g.*

26  *Amphenol v. Shandler (In re Insilco Technologies, Inc.)*, 351 B.R. 313 (Bankr. D. Del.

27  2006) (sale of debtor's assets and shares of its non-debtor subsidiary through 363(b)

28  approved by the court).  The fact that a parent corporation has an ownership interest in a

1  subsidiary, however, does not give the parent any direct interest in the assets of the

2  subsidiary.   Kreisler v. Goldberg, 478 F.3d 209, (4th Cir. 2007).  Although the Debtor

3  could have established an ownership interest in the Fairwinds Estate, it chose not to do so.

4   Instead, it created an LLC for the purpose of holding membership in a second LLC for

5  the purpose of holding title to the property.   Having assumed whatever benefits flowed

6  from that decision, it cannot now ignore the existence of the LLCs in order to escape the

7  LLCs disadvantages.   See Terry v. Yancey, 344 F.2d 789 (4th Cir.1965) (explaining that

8  "where an individual creates a corporation as a means of carrying out his business

9  purposes he may not ignore the existence of the corporation in order to avoid its

10 disadvantages").   There is a legally significant distinction between the Debtor's interest in

11 CR Tahoe, CR Tahoe's interest in 9898 Lake and 9898 Lake's direct ownership interest

12 of the Fairwinds Estate real property.   The assets of 9898 Lake belong to 9898 Lake and

13 do not form part of the Debtor's bankruptcy estate.

14      The Plan did not provide any legal mechanism to collapse the assets of the non-

15 debtor subsidiaries of the Debtor into the Debtor.  The collapsing of entities is generally

16 recognized in three contexts, (1) piercing the corporate veil, (2) substantive consolidation

17 in bankruptcy and (3) leveraged buy out transactions, none of which are present here. At

18 the Plan confirmation hearing the Court specifically held that it was not substantively

19 consolidating the Debtor with its non-debtor subsidiaries, and noone was arguing for the

20 other recognized collapsing mechanisms.

21      Further, Lawrence has contingencies to the purchase of the Purchased Assets

22 including that the Purchased Assets, including the Fairwinds Estate, be sold free and clear

23 of all liens, claims and interests at Closing.  Paye claims an interest in 9898 Lake, and has

24 claims against CR Tahoe, the Fairwinds Estate, and 9898 Lake.  The Fairwinds Estate

25 cannot be sold free and clear of those claims or interests.  Additionally, it is unclear if

26 there are other creditors or parties in interest exist which may require notice of such a sale

27 which would cancel their liens, claims or interest.  Specifically, the Plan provides that

28 "after entry of the Confirmation Order, the Plan authorizes and directs [CR Tahoe] to

1    dissolve, if necessary, and cause 9898 Lake to Transfer by grant deed all of 9898 Lake's

2    right, title and interest in the Fairwinds Estate to the Debtor, subject to the Secured Claim

3    of Capital One.  On the Effective Date and as part of the Closing, the Debtor shall

4    transfer the Fairwinds Estate to the Buyer free and clear of all Liens and Claims other

5    than the Secured Claim of Capital One, which shall be treated in accordance with Article

6    IV.B.5 hereof."

7         The dissolution and windup for both CR Tahoe and 9898 Lake are governed by

8    Delaware and California law respectively.  Both require that upon dissolution a windup

9    occur.  Winding up the LLCs requires that the assets of the LLCs be sold and the creditors

10   be paid.  Capital One and Paye are entitled to payment from the sale of assets ahead of

11   CR Tahoe which entity is ahead of the Debtor.  *See* Delaware Code, Title 6, §18-804

12   Distribution of Assets ("upon the winding up of a limited liability company, the assets

13   shall be distributed as follows: (1) to creditors, including members and managers who are

14   creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the

15   limited liability company..."); *see also* Cal Corp Code Article 7 Dissolution and Winding

16   Up §17707.04 through 17707.06 (assets sold and creditors paid first, ahead of members).

17   Further even after a cancellation statement is filed the entity will still exist to sue and be

18   sued for purposes of winding up.  The Plan cannot short cut the state law requirements for

19   dissolving the non-debtor entities, limit creditors and interest of those non-debtor entities,

20   or cause the non-debtor entities to sell their sole asset, the Fairwinds Estate to the

21   detriment of those non-debtor entities creditors.  At best, the Debtor had its membership

22   interest in CR Tahoe to sell to the Buyer.

23        Accordingly, because the Plan does not provide a legal means of acquiring the

24   assets of the non-party non-debtor subsidiary of the subsidiary of the Debtor, and does not

25   provide a legal means of collapsing the assets but not the liabilities of CR Tahoe and

26   9898 Lake into the Debtor in order to effectuate their sale, the Plan Proponent's sale of

27   non-estate assets under their Plan has been proposed by a means forbidden by law, and

28   the Plan fails 11 U.S.C. §1129(a)(3).

**(B)     The Plan Fails §1123(a)(5) Requirement.**

11 U.S.C. §1123(a)(5) provides in relevant part that, "(a) notwithstanding any otherwise applicable nonbankruptcy law, a plan shall (5) provide adequate means for the plan's implementation, such as – (B) transfer of all or any part of the property of the estate to one or more entities" and (D) sale of all or any part of the property of the estate, either subject to or free and clear of liens..."  Here, the Plan fails for want of providing adequate means for implementing the plan.  The bankruptcy code does not confur upon the Debtor or the presiding Judge the ability to modify rights and sell assets of non-debtor entities free and clear of lines or interests.  Accordingly, as set forth more fully above, the plan fails because the described means of implementing the Plan- by selling the real property of the non-debtor subsidiary of the non-debtor subsidiary free and clear of claims liens and interest– is not permitted by the bankruptcy code.

**( C)     The Plan Causes a Fraudulent Transfer of the Fairwinds Estate and provides immunity to the people effectuating the fraudulent transfer**

Paragraph 13 of the Confirmation Order provides that the Debtor shall: "(b) consistent with Section B of Article VI of the Plan, cause a duly executed and acknowledged grant deeds transferring all of 9898 Lake's right, title and interest in the Fairwinds Estates to Debtor (and subsequently to Buyer) to be recorded in the Official Records of Placer County California after the expiration of the stay of this Confirmation Order."

**(D)     The Transfer of the Fairwinds Estate is a Fraudulent Transfer that the Court cannot Exonerate.**

Cal. Civ. Code § 3439 et seq. embodies the current regime of California law – known as the Uniform Fraudulent Transfer Act.  The UFTA prohibits debtors from transferring or placing property beyond the reach of their creditors when that property should be available for the satisfaction of the creditors' legitimate claims.  A transfer under the UFTA is defined as "every mode, direct or indirect, absolute or conditional,

1   voluntary or involuntary, of disposing of or parting with an asset …, and includes

2   payment of money, release, lease, and creation of a lien or other encumbrance." Cal. Civ.

3   Code § 3439.01(i).

4        UFTA provides remedies only to those creditors to whom a debt, as defined in §

5   3439.01, is owed. Whether the creditor's claim arose before or after the debtor made the

6   transfer or incurred the obligation, four (4) distinct grounds for finding a fraudulent

7   transfer exist:

8        (i) Cal. Civ. Code § 3439.04(a)(1) designates as fraudulent any transfer made or

9   obligation incurred by a debtor with actual intent (determination of "actual intent"

10   depends on the assessment of eleven factors, see infra Actual Fraudulent Intent for §

11   3439.04(a)(1) Determined by § 3439.04(b)) to hinder, delay, or defraud any creditor of

12   the debtor;

13        (ii) Cal. Civ. Code § 3439.04(a)(2)(A) designates as fraudulent (and presumes

14   fraudulent intent) a transfer made or obligation incurred ***without receiving reasonably***

15   ***equivalent value*** where the debtor was engaged or about to engage in a business or

16   transaction with ***unreasonably small remaining assets*** in relation to the business or

17   transaction (emphasis added);

18        (iii) Cal. Civ. Code § 3439.04(a)(2)(B) designates as fraudulent (and presumes

19   fraudulent intent) a transfer made or obligation incurred without receiving reasonably

20   equivalent value where the debtor intended to incur, or believed or reasonably should

21   have believed that he or she would incur, debts beyond his or her ability to pay as the

22   debts became due;

23        (iv) Cal. Civ. Code § 3439.05 designates as fraudulent (and presumes fraudulent

24   intent) a transfer made or obligation incurred without receiving reasonably equivalent

25   value where the debtor was insolvent at the time of making the transfer or incurring the

26   obligation or ***became insolvent as a result of the transfer*** or obligation. (emphasis

27   added)

28        It is not necessary that the transferor acted maliciously or with a desire to harm his

1  creditors.  See Economy Refining & Service Co. v. Royal Nat'l Bank (1971) 20 Cal. App.

2  3d 434, 441.  The Economy Refining & Service Co. Court held that it was the debtor's

3  intent to make the transfer, rather than some evil intent to harm the creditor, which

4  sufficed for finding intent to defraud.  Id. ("actual intent to defraud consisted of the intent

5  [. . .] to remove the assets and to make impossible the collection of appellant's

6  judgment").  Furthermore, in the words of one court:

> Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively.  [. . .]  It cannot be said that a creditor has been injured unless the transfer puts beyond [her] reach property [she] otherwise would be able to subject to the payment of [her] debt.

10  Mehrtash v. Mehrtash (2001) 93 Cal. App. 4th 75, 80.

11      The "actual intent" referred to in § 3439.04(a)(1) is determined upon consideration

12  of eleven (11) factors set out in § 3439.04(b).  See also Filip v. Bucurenciu (2005) 129

13  Cal. App. 4th 825, 834 (factors are not mathematical formula, but to provide guidance to

14  court, not compel finding one way or other).  Cal. Civ. Code § 3439.04(b) states:

15      In determining actual intent under paragraph (1) of subdivision (a), consideration

16  may be given, among other factors, to any or all of the following:

(1) Whether the transfer or obligation was to an insider.

(2) Whether the debtor retained possession or control of the property transferred after the transfer.

(3) Whether the transfer or obligation was disclosed or concealed.

(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(5) Whether the transfer was of substantially all the debtor's assets.

(6) Whether the debtor absconded.

(7) Whether the debtor removed or concealed assets.

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lien holder who transferred the assets to an insider of the debtor.

There are two (2) forms of constructive fraud grounding creditor claims which arose either before or after the transfer under the UFTA. The first, Cal. Civ. Code § 3439.04(a)(2)(A), provides that a transfer is fraudulent if the debtor did not receive reasonably equivalent consideration and "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction." The second, Cal. Civ. Code § 3439(a)(2)(B), provides that a transfer is fraudulent if the debtor did not receive reasonably equivalent consideration and "[i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."

Related, Cal. Civ. Code § 3439.05 provides that a transfer is fraudulent as to an existing creditor if the debtor does not receive reasonably equivalent value and "was insolvent at that time or . . . became insolvent as a result of the transfer . . . ." Cal. Civ. Code § 3439.02 defines insolvency and § 3439.02(c) allows a presumption of insolvency where a debtor is generally not paying his debts as they become due. In other words, this section acts to prevent a debtor from transferring his last assets at unreasonably low value, thereby depriving the creditor of an existing claim on the assets, if the debtor was insolvent or became insolvent because of the transfer.

Here, the Fairwinds Estate has a first priority lien held by Capital One. The debt on that obligation has not been paid for some time and there have been threats of foreclosure from Capital One. Further, pursuant to the Plan Proponents' Plan and as represented at the confirmation hearing, while the Fairwinds Estate is "part of the Purchased Assets (as defined in the Plan)" zero dollars ($0) from the sale will go to 9898 Lake. Further, the Plan provides:

After entry of the Confirmation Order, this Plan authorizes and directs

[CR Tahoe] to dissolve, if necessary, and cause 9898 Lake to transfer by grant deed all of 9898 Lake's right, title and interest in the Fairwinds Estate to the Debtor, subject to the Secured Claim of Capital One. On the Effective Date and as part of the Closing, the Debtor shall transfer the Fairwinds Estate to the Buyer free and clear of all Liens and Claims other than the Secured Claim of Capital One, which shall be treated in accordance with in Article IV.B.5 hereof.

In its Objections and at the confirmation hearing Paye asserted that it has claims against CR Tahoe, 9898 Lake and the Fairwinds Estate. By allowing the Plan to be confirmed the Court asserted jurisdiction and authority over the non-debtor non-party separate legal entity CR Tahoe and approved CR Tahoe's dissolution without any notice to its creditors and without consideration for Delaware's wind-down process, and the Court has asserted jurisdiction and authority over the non-debtor separate legal entity 9898 Lake and approved 9898 Lake's transfer its only asset, or substantially all of its assets, by grant deed for no value to the Debtor, an insider. The Plan leaves creditors of CR Tahoe and 9898 Lake, two non-debtor non-party entities, holding an empty bag. These transfers involve CR Tahoe and 9898 Lake affirmatively moving property beyond the reach of their creditors when that property should be available for the satisfaction of their creditors' legitimate claims. The confirmed Plan approves the fraudulent transfer and windup without regard to state law.

Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938). Here, the transfer of the Fairwinds Estate and windup of the two non-debtor non-party entities is governed by state law, and the bankruptcy court has ignored the procedure for winding up the affairs of CR Tahoe and 9898 Lake.

### (E)   Jurisdiction and Standing.

In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. Warth v. Seldin, 422 U.S. 490, 498 (1975). This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. E.g., Barrows v. Jackson, 346 U.S. 249, 255-256 (1953). In both dimensions it is founded in concern about the proper -- and

1    properly limited -- role of the courts in a democratic society. See Schlesinger v. Reservists

2    to Stop the War, 418 U.S. 208, 221-227 (1974); United States v. Richardson, 418 U.S.

3    166, 188-197 (1974) (POWELL, J., concurring).  Paye asserts that the Plan Proponents

4    and the Debtor do not have standing to affect its rights with regard to the non-party non-

5    debtor entities and the real property of the subsidiary of the subsidiary of the Debtor, and

6    that the Court does not have authority to grant the Plan Proponents and/or the Debtor the

7    ability to modify, limit or extinguish Paye's claims against the non-party non-debtor

8    entities and the real property of the subsidiary of the subsidiary of the Debtor.  Paye

9    argues that the Plan violates Paye's due process rights.  Further, Paye asserts that the

10   bankruptcy court does not have authority to sell assets of non-debtors with the protections

11   only afforded bankrupt debtors, such as selling the Fairwinds Estate free and clear of

12   Paye's rights claims and interests and extinguishing Paye's claims against 9898 Lake, and

13   finally, leaving Paye without any source of recovery for its known claims against CR

14   Tahoe, 9898 Lake and the Fairwinds Estate.

15          **2.      Paye Will Be Irreparably Injured If The Order Is Not Stayed**

16          The Court must consider whether Paye will suffer irreparable injury if the stay is

17   not granted.  To obtain a stay, Paye must demonstrate a "reasonable likelihood of future

18   injury."  In re Smith, 397 B.R. 134, 146 (Bankr. D. Nev. 2008) (*quoting* Bank of Lake

19   Tahoe v. Bank of America, 318 F.3d 914, 918 (9th Cir. 2003) (discussing issuing

20   prospective injunctions)).  An irreparable injury is one that is not remote or speculative,

21   but instead is actual and imminent and for which money damages would not be adequate

22   compensation.  In re Station Casinos, Inc., 2010 Bankr. LEXIS 5438 (Bankr. D. Nev.,

23   July 26, 2010);  In re PTI Holding Corp., 346 B.R. 820, 827 (Bankr. D. Nev. 2006).

24          In evaluating the element of irreparable harm, it is necessary to analyze the risk

25   that an appeal would be mooted in the absence of a stay.  Loss of appellate rights is a

26   "quintessential form of prejudice."  In re Adelphia Comm. Corp., 361 B.R. 337, 348 (S.D.

27   N.Y. 2007), *citing* In re Country Squire, 203 B.R.182, 183 (B.A.P. 2nd Cir. 1996).

28   "Thus, where denial of a stay pending appeal risks mooting any appeal of significant

1    claims of error, the irreparable harm requirement is satisfied." Id.

2          Injunctive relief is appropriate where threatened conduct will likely cause a party

3    irreparable harm.  Chalk v. U.S. District Court Cent. Dist. Of Cal., 840 F.2d 701 (9th Cir.

4    1988).  It is well-settled that "irreparable harm consists of harm that cannot be remedied

5    by an award of monetary damages, or an injury that cannot be quantified monetarily.

6    Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18(1st Cir. 1996);

7    Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3rd Cir. 1992).

8          In California, real property has historically been held to be unique.  If the Court

9    does not issue a stay pending appeal, and the Plan is implemented, Paye will be

10   irreparably harmed by the loss of its first right of offer to acquire the Fairwinds Estate.

11   The loss of real property cannot be compensated by money damages because it is unique.

12         As set forth above, Paye has filed an adversary proceeding in a separate

13   bankruptcy case to enforce its rights with regard to the Exchange Agreement and its

14   option to purchase either the membership interests in 9898 Lake or the Fairwinds Estate.

15   In the event a stay is not issued and the Fairwinds Estate is transferred away from 9898

16   Lake, the real property and the proceeds from the sale thereof will be beyond the reach of

17   Paye, Paye will be left with no effective remedy against the non-debtor defendants in its

18   pending adversary action, and Paye will suffer irreparable harm.

19         Further, the injury suffered by Paye cannot be remedied by an award of money

20   damages, and will result in an injury that cannot be quantified monetarily.  It is a familiar

21   legal principal that a damage award is generally an inadequate remedy for a breach of

22   contract involving real estate and, therefore, courts routinely grant a plaintiff's request for

23   specific performance.  Real Estate Analytics, LLC v. Vallas, 160 Cal. App. 4th 463, 473

24   (2008); (See Thompson & Sebert, Remedies: Damages, Equity and Restitution (2d ed.

25   1989) pp. 885–886.)  Courts use special treatment for land sale contracts, reflecting the

26   enduring view that: (1) each parcel of land is unique and therefore there can be no

27   adequate replacement after a breach; and (2) monetary damages are difficult to calculate

28   after a party refuses to complete a land sales contract, particularly expectation damages.

1  Real Estate Analytics, LLC, 160 Cal. App. 4th at 473; (See Rest.2d Contracts, § 360.)

2  In California, these principles are embodied in Civil Code section 3387. Section

3  3387 states: "It is to be presumed that the breach of an agreement to transfer real property

4  cannot be adequately relieved by pecuniary compensation. In the case of a single-family

5  dwelling which the party seeking performance intends to occupy, this presumption is

6  conclusive. In all other cases, this presumption is a presumption affecting the burden of

7  proof." The rebuttable presumption shifts the burden of proof to the breaching party to

8  prove the adequacy of the damages. By so doing, the Legislature intended that a damages

9  remedy for a non-breaching party to a commercial real estate contract is the exception

10  rather than the rule. Real Estate Analytics, LLC, 160 Cal. App. 4th at 473.

11  In California there is a dearth of appellate court decisions addressing the issue of

12  the scope of the breaching party's burden to rebut presumption that the damages remedy is

13  inadequate when the buyer sought to purchase the property for a commercial or

14  investment purpose. Id. Courts generally assume the uniqueness of land and grant

15  specific performance after a breach of a land sale contract in both residential and

16  commercial contexts, with little or no discussion of the adequacy of remedy issue. Id.

17  The real property at issue here is the Fairwinds Estate. The Fairwinds Estate was

18  built in 1934. It is made up of a residence with over nine (9) bedrooms and nine (9)

19  bathrooms, a great room, full kitchen, a detached guest unit with full kitchen, loft,

20  bedroom, and bathroom, and a detached large storage unit/small garage. The Fairwinds

21  Estate has approximately 300 linear feet of frontage on Lake Tahoe and a private pier.

22  Further, the Fairwinds estate has special sentimental value to Paye as its members have

23  spent over 30 years visiting the Fairwinds Estate with family and Friends.

24  If a stay pending appeal is not issued, and the Fairwinds Estate is lost through a

25  sale to Lawerence contemplated by the Order, any court will be unable to make Paye

26  whole if it is successful on its complaint in the adversary action, as there would be an

27  inadequate remedy at law.

28  ///

3. **Other Interested Parties Will Not Be Harmed As A Result Of The Stay.**

The purpose of a stay pending appeal is to preserve the *status quo.*  In re Victory Constr. Co., Inc., 37 B.R. 222, 226 (9th Cir. BAP 1984) ("[t]he essence of the protection under Rule 8005, like the protection under Sec. 361, is the maintenance of the status quo"); Vacation Village, Inc. v. Clark County, Nev., 497 F.3d 902, 914 (9th Cir. 2007) ("Rule 62(d) is a purely procedural mechanism to preserve the status quo during a stay pending appeal of a district court decision").

The Plan Proponents have argued that the creditors of the bankruptcy case estate will be harmed if a stay pending appeal is imposed, as the Plan will not become effective, the Buyer under the Plan may walkaway, and there is no evidence that another purchaser exists to acquire the same assets (both estate and non-estate) for as much as Lawrence was willing to pay. Paye is not a creditor of this bankruptcy case estate. Paye has objected to the Plan because the Plan illegally seeks to modify Paye's rights to non-debtor non-party entities and those entities' assets. The Court cannot put the creditors of the Debtor's bankruptcy case estate ahead of the creditors of CR Tahoe and 9898 Lake with regard to rights and claims against those non-debtor entities and those non-debtor entities' assets, including the Fairwinds Estate. The Debtor is merely an equity holder in CR Tahoe and CR Tahoe is an equity member of 9898 Lake. The creditors of 9898 Lake must be satisfied by 9898 Lake's assets ahead of CR Tahoe, and CR Tahoe's creditors must be satisfied by the assets of CR Tahoe head of the Debtor and the Debtor's creditors.

Further, the Debtor and its affiliates have abandoned making any payments on the Fairwinds Estate secured claim, and have failed to care for the property. During the winter of 2016 the Fairwinds Estate was falling to waste, had vandalism, and theft when Paye entered into an agreement to keep up the Fairwinds Estate, and it has been doing so since June 1, 2017. Given the opportunity, Paye will continue to keep with its care taking of the Fairwinds Estate pending the appeal. Further, the resort property will continue to be maintained as secure, and the roof repair may proceed. Accordingly, balancing the relative hardships sharply favor protecting Paye's rights against the non-debtor

subsidiaries of the Debtor and those non-debtor subsidiaries' assets.  The Motion for Stay must be granted.

### 4.      A Stay Is In The Public Interest

In deciding whether to grant preliminary injunctive relief, Court must "pay particular regard for the public consequences ...." Winter, *supra*, 129 S.Ct. at 376-77. The public has an interest in the successful and just resolution of the affairs of a bankrupt debtor. *See* In re PTI Holding Corp., 346 B.R. 820, 832-33 (Bankr. D. Nev. 2006); In re Stadium Management Corp., 95 B.R. 264, 269 (Bankr. D. Mass 1988); In re Monroe Well Service, Inc., 67 B.R. 746, 756 (Bankr. E.D. Pa. 1986).  The Plan Proponents argue that public policy strongly favors the bankruptcy case being administered, that bankruptcy sales are final, and that public policy favors maximizing the Debtor's estate and facilitating reorganization.  Here, this is a plan of liquidation, not reorganization, and the Plan seeks to sell assets of a non-debtor subsidiary with bankruptcy benefits (free and clear of liens, claims and interests) even thought the subsidiary is not a bankrupt.  The Plan ignores both federal bankruptcy law and state law, and seeks to effectuate a sale by a means forbidden by law.

Here public interest favors maintaining the status quo during the pendency of this appeal. Further, the public interest is served by ensuring that jurisdictional, authoritative, standing and due process  requirements are met. Public interest is served by ensuring the law of the land is being properly carried out, and that parties in interest have adequate means of defending their rights.

### 5.      Paye Should Not Be Required To Post A Bond

Paye should not be reuired to post a supersedeas bond if this Court grants a stay pending appeal.  In order to determine whether a bond should be ordered to protect the appellee, the court must first determine whether this is an instance where a supersedeas bond is appropriate.  In order to determine whether a bond is appropriate, this court should look to the Federal Rules of Bankruptcy Procedure.  Rule 7062 incorporates the provisions of Rule 62 of the Federal Rules of Civil Procedure.  Rule 62(d) states:

When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

The posting of a supersedeas bond is not the exclusive means by which a party may obtain a stay pending appeal. Courts routinely exercise their discretion to permit parties to post alternative security in lieu of a supersedeas bond to secure a judgement pending appeal. *See e.g.* <u>United States v. Boyce</u>, 148 F. 2d 1069, 1096 (S.D. Cal 2001) ("The Court can...approve the posting of alternative security [in lieu of a supersedeas bond].") ; <u>Townsend v.Holman Consulting Corp.</u>, 929 F.2d 1359 (9th Cir. 1991); <u>Int'l Telemeter, Corp. v. Hamlin Int'l Corp.</u>, 754 F.2d 1492, 1495 (9th Cir. 1985) (approving placing finds in escrow account as an alternative form of judgment guarantee); <u>Olympia Leasing Equip. Co. v. Western Union Tel. Co.</u>, 786 F.2d 794, 797-98 (7th Cir. 1986) (affirming decision allowing appellant to pledge cash and accounts receivable and a grant of a security interest in lieu of supersedeas bond.) In appropriate circumstances court's waive the bond requirement altogether. *See e.g.* <u>Dillon v. City of Chicago, 866 F.2d 902, 904-905 (7th Cir. 1988)</u>.

The initial issue is whether this appeal falls within Rule 62(d). Cases are uniform in concluding that Rule 62(d) pertains primarily, if not exclusively, to monetary judgments. <u>In re Fullmer</u>, 323 B.R. 287, 291 (Bankr. D. Nev. 2005) (citations omitted). "Courts have restricted the application of Rule 62(d)'s automatic stay to judgments for money..." <u>Hebert v. Exxon Corp.</u>, 953 F.2d 936, 938 (5th Cir. 1992). *See also,* <u>In re Capital West Investors</u>, 180 B.R. 240, 242-43 (N.D. Cal. 1995), rev'd on merits after stay denied, 186 B.R. 497 (N.D. Cal. 1995) (appeal from plan confirmation order not subject to Rule 62(d)). Here, the appeal is not an appeal of a monetary judgement, but of a confirmed plan, and therefore, a supersedeas bond is not required. Further, Paye is not a creditor of the bankruptcy case estate and hardly a party in interest save for the Plan's substantial modification of Paye's rights and remedies against non-debtor non-parties and

1   those non-debtor non-party's assets.  Accordingly, Paye should not be required to post a

2   bond.  Further, Paye agrees to continue to maintain the Fairwinds Estate pending its

3   appeal.  The only way to maintain the *status quo* is to implement a stay.  The balancing

4   the relative hardships weigh sharply in favor of granting the Motion for Stay.

5   **D.    CONCLUSION**

6         Based upon the foregoing, Paye has satisfied all four elements required for a

7   discretionary stay under Bankruptcy Rule 8007, and Appellate Rule 8(a).  Paye has shown

8   a likelihood of success on the merits and that it will be irreparably harmed if a stay is not

9   granted.  The harm to Paye if a stay is not granted far outweighs the harm to creditors of

10   the Debtor's bankruptcy case estate, especially in light of the fact that Paye will continue

11   to maintain the Fairwinds Estate during the pendency of its appeal.  Finally, the public

12   interest is best served by imposing a stay and protecting the due process rights of Paye.

13         WHEREFORE, Paye respectfully requests the Court grant a discretionary stay of

14   the Order and the Chapter 11 proceedings pending the appeal on this matter.

15         **DATED** this 23rd day of October, 2017.

16                         ESTES LAW

17                 By:_____*/s/ Holly E. Estes*_____

18                     HOLLY E. ESTES, ESQ.
                            Paul and Evy Paye, LLC

19

20

21

22

23

24

25

26

27

28

**ESTES LAW**
**605 Forest Street**
**Reno, Nevada  89509**
**(775) 321-1333**      E:\Cal-Neva Cases\Appeal (Paye)\BAP 17-1307\Mot Stay Pend App\Mot Stay Pending App 102217.wpd

33

1

2 **<u>CERTIFICATE OF SERVICE</u>**

3

4      I, Holly E. Estes, Esq., hereby certify that on the 23rd day of October, 2017, the

foregoing document was served on all persons listed on the Notice of Electronic Filing

5 through the ECF System.

6

                           */s/ Holly E. Estes*

7

8                         _____

9                         HOLLY E. ESTES

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28