1   Courtney Miller O'Mara (NV Bar No. 10683)
    comara@fclaw.com
2   **FENNEMORE CRAIG, P.C.**
    300 E. 2nd Street, Suite 1510
3   Reno, NV 89501
    Tel:  (775) 788-2200  Fax:  (775) 786-1177
4
    Shirley S. Cho (*pro hac vice application forthcoming in*
5   *compliance with LR IA 11-2*)
    scho@pszjlaw.com
6   **PACHULSKI STANG ZIEHL & JONES LLP**
    150 California Street, 15TH Floor
7   San Francisco, CA 94111
    Tel: (415) 263-7000  Fax: (415) 263-7010
8   **Counsel to the Official Committee of Unsecured**
    **Creditors**
9
    Eric Goldberg (CA Bar No. 157544) (*pro hac vice*
10  *application forthcoming in compliance with LR IA 11-2*)
    eric.goldberg@dlapiper.com
11  Paul Wassgren (NV Bar No. 9216)
    paul.wassgren@dlapiper.com
12  DLA PIPER LLP (US)
    2000 Avenue Of The Stars, Suite 400 North Tower
13  Los Angeles, CA 90067-4704
    Tel:  310.595.3000  Fax:  310.595.3300
14  **Counsel to Lawrence Investments, LLC**

15              UNITED STATES DISTRICT COURT

16                  DISTRICT OF NEVADA

17

18  In Re:                              CASE NO.  3:17-cv-00640-RCJ

19  NEW CAL-NEVA LODGE, LLC,            **US BANKRUPTCY COURT, DISTRICT OF**
                                        **NEVADA CASE NO.:** BK-16-51282-GWZ
             Debtor,
20                                      **APPEAL REF. NO.:**  17-50

21                                      **BAP NO.**  NV-17-1307

22  PAUL AND EVY PAYE, LLC,             **JOINT OPPOSITION OF THE**
                                        **CREDITORS COMMITTEE AND**
23           Appellant,                 **LAWRENCE INVESTMENTS, LLC TO**
                                        **PAUL AND EVY PAYE LLC'S**
24       v.                             **EMERGENCY MOTION FOR STAY**
                                        **PENDING APPEAL**
25  LAWRENCE INVESTMENTS, LLC;
    OFFICIAL COMMITTEE OF               **HEARING DATE:**  Nov. 3, 2017
26  UNSECURED CREDITORS,
    Defendant.                          **HEARING TIME:**  10:00 a.m.
27
             Appellees.
28

1   Lawrence Investments, LLC ("Lawrence") and the Official Committee of

2   Unsecured Creditors (the "Committee"), the co-proponents of the First Amended Plan of

3   Liquidation ("Plan") for New Cal-Neva Lodge, LLC ("Debtor"), jointly file this opposition to

4   Paul and Evy Paye LLC's Emergency Motion for Stay Pending Appeal ( "Paye Stay

5   Motion"), and in support thereof state as follows:

6   **I.    STATEMENT OF FACTS**

7         1.      The Joint Opposition to Hall CA-NV LLC's Expedited Motion to Stay

8   Confirmation Order Pending Appeal ("Hall Opposition") filed by Lawrence and the

9   Committee ("Plan Proponents") sets forth in detail the events and circumstances

10  surrounding the Plan and confirmation process.[1]  In short, at the Confirmation Hearing,

11  the Bankruptcy Court confirmed a Plan that ordered the Debtor to sell its assets to the

12  highest bidder for cash at an open auction before the Bankruptcy Court.  Lawrence was

13  the stalking horse purchaser under the Plan for total consideration of $38 million.  At the

14  Confirmation Hearing, creditors and other parties, including Paul and Evy Paye LLC

15  ("Paye"), had the opportunity to make a bid for all of the Purchased Assets, or even just

16  for the Fairwinds Estate.  Tellingly, while Paye claims now that the Fairwinds Estate is so

17  unique, and that the Plan deprived Paye of its alleged right to buy it back, Paye never

18  even bothered to make a bid for the Fairwinds Estate at or before the Confirmation

19  Hearing.

20         2.      Instead, at the Confirmation Hearing, Paye objected to confirmation of the

21  Plan.  At the heart of Paye's Plan objection was a right of first offer set forth in an

22  Exchange Agreement entered into in October 2014 between Paye and Cal Neva Lodge,

23  LLC; the Debtor, 9898 Lake, and CR Lake Tahoe are <u>not</u> parties to the Exchange

24  Agreement.  Paye contends that the Exchange Agreement gives Paye a right of first

25  offer for the purchase of the Fairwinds Estate, or some portion of the membership

26

27  ───────────────

    [1] The Hall Opposition (filed as Docket No. 14 in Case No. 3:17-cv-00636-RCJ) is incorporated by
    reference herein.  All capitalized terms shall have the meanings set forth in the Hall Opposition.  All
28  references to docket numbers refer to the Debtor's bankruptcy docket, unless otherwise indicated.

1  interests in 9898 Lake (the fee owner of the Fairwinds Estate), if one of three specific

2  triggering events occurs (the "<u>Buyback Option</u>").  However, after considering the

3  Exchange Agreement and the language of the Buyback Option at the Confirmation

4  Hearing, and again when Paye requested a stay of the Confirmation Order, the

5  Bankruptcy Court found that none of the triggering events had occurred, and that Paye

6  was not entitled to exercise the Buyback Option.

7        3.    The Bankruptcy Court conducted a full-day trial on the Plan, at which Paye

8  had a full and fair opportunity to raise objections, present evidence, and cross-examine

9  witnesses.  After hearing all the evidence and argument, the Bankruptcy Court overruled

10  Paye's objections and confirmed the Plan.  On October 20, 2017, the Bankruptcy Court

11  again heard evidence and argument from Paye, when it considered Paye's motions for a

12  stay pending appeal and a preliminary injunction.  Again, after devoting almost a full day

13  to the matter, the Bankruptcy Court found that Paye's arguments with respect to the

14  Buyback Option and the Fairwinds Estate were without merit, and denied both motions.

15        4.    After the October 20, 2017 hearing, where the Bankruptcy Court denied

16  Paye's motion for a stay pending appeal (and a parallel motion by Hall CA-NV LLC

17  ("<u>Hall</u>")), Hall and Paye both filed with this Court emergency motions seeking a stay of

18  the Confirmation Order.  Case No. 3:17-cv-00636-RCJ, ECF No. 6 (Hall motion for stay);

19  Case No. 3:17-cv-00640-RCJ, ECF No. 7 (Paye Stay Motion).  On October 24, 2017, the

20  Court held a hearing on Hall's emergency stay motion and issued a stay of the

21  Confirmation Order, subject to Hall providing an appropriate supersedeas bond.  Before

22  the Court now is the Paye Stay Motion.

23  **II.    <u>ARGUMENT</u>**

24        This Court should deny the Paye Stay Motion because (1) Paye lacks standing to

25  object to confirmation of the Plan and to prosecute its appeal, and (2) there was no

26  abuse of discretion by the Bankruptcy Court in reaching its determinations that (a) Paye

27  will not be successful on the merits of its appeal, (b) Paye will not suffer irreparable harm

28  if no stay is issued, (c) the balance of equities does not support the issuance of a stay,

1   and (d) the public interest does not support issuance of a stay.

2          **A.      Paye Lacks Standing to Seek a Stay of the Confirmation Order.**

3          Pursuant to 11 U.S.C. § 1324(a), only a "party in interest" may object to

4   confirmation of a bankruptcy plan.  Although "party in interest" is not defined in the

5   Bankruptcy Code, the Ninth Circuit has recognized that courts "have not interpreted

6   'party in interest' to mean 'anyone who might be affected by the bankruptcy proceeding;'

7   rather, a party in interest is one who has a '*legally protected interest* that could be

8   affected by a bankruptcy proceeding.'"  *In re Tower Park Properties, LLC*, 803 F.3d 450,

9   457 (9th Cir. 2015) (quoting *In re Thorpe Insulation Co.*, 677 F.3d 869, 884 (9th Cir.

10  2012)) (emphasis in original).  "Thus, an entity 'that may suffer collateral damage' but

11  does not have a legally protected interest does not have standing" as a party in interest.

12  *Id.* (discussing party in interest standard under 11 U.S.C. § 1109) (quoting *In re C.P. Hall*

13  *Co.*, 750 F.3d 659, 661 (7th Cir. 2014)).  Such collateral damage is considered "too

14  remote" to confer party in interest standing.  *Id.*

15         Paye is not a party in interest to the Debtor's bankruptcy.  Accordingly, Paye

16  lacked standing to object to confirmation of the Plan before the Bankruptcy Court, and

17  lacks standing to prosecute its appeal and seek a stay of the Confirmation Order.

18         First, Paye did not file any proof of claim in the Debtor's bankruptcy, nor did it ever

19  file a proof of claim against Cal Neva Lodge, LLC ("Parent"), the Debtor's parent.  Paye

20  acknowledges that it is not a creditor of the Debtor, and holds no claims against the

21  Debtor.  There is also no dispute that Paye has no contractual relationship with the

22  Debtor; the Debtor is not a party to the Exchange Agreement, which is between Paye

23  and the Debtor's Parent.  *See* Findings at ¶ 32.

24         Second, Paye does not have any real property interest in the Fairwinds Estate:

25         THE BANKRUPTCY COURT: Now, you assert that your
           clients believe they have an interest in the real property …
26
           MS. ESTES: I don't believe so, Your Honor ...
27
           THE BANKRUPTCY COURT: And they didn't have any real
28         property interest to transfer. The Paye, LLC did not have any

DLA PIPER LLP (US)
LOS ANGELES
WEST\278660984.3

1    real property interest to transfer. Is that what you're telling
2    me?

3    MS. ESTES: That's correct, Your Honor. They had a
     membership interest.

4    THE BANKRUPTCY COURT: So they never had any interest
5    except a personal property interest perhaps in the ownership
     of 9898 Lake, and then they transferred that to get an
6    ownership interest in Cal Neva Lodge.

7    MS. ESTES: That was the expectation, Your Honor.

Confirmation Hearing Transcript at pp. 168-69.

8         In addition, whatever claims Paye may hold against Parent arising out of the

9    Exchange Agreement are not impaired or affected by the Plan.  *See* Stay Motion

10   Hearing Transcript[2] at p. 108 ("[T]he Payes still have their contractual remedy.").  The

11   Plan simply allows the transfer of the Fairwinds Estate free and clear of any claims or

12   interests that Paye might have asserted against the property itself – which Paye admits it

13   does not have.  Moreover, the transfer is subject to any breach of contract action a third

14   party like Paye may have against Parent following the Debtor's exercise of its right, as a

15   matter of corporate law, to transfer the Fairwinds Estate.

16        Finally, the Buyback Option does not give Paye any interest in the Fairwinds

17   Estate because the Buyback Option is not triggered under the circumstances present

18   here.  *See* Section II(B)(3), *infra* (explaining why the Buyback Option has not been

19   triggered).

20        Paye does not have any legally protected interest that is affected in any way by

21   the Plan.  Accordingly, Paye is not a party in interest, lacked standing to object to the

22   Plan, and lacks standing to prosecute this appeal or to seek a stay.

23

24

25   [2] The Transcript of Motion to Stay Pending Appeal with Certificate of Service Filed by Frank J. Wright on
     Behalf of Hall-CA NV, LLC [980]; Motion to Stay Pending Appeal Filed by Holly E. Estes on Behalf of Evy
26   Paye, Paul Paye [992] Before the Honorable Gregg W. Zive, United States Bankruptcy Judge shall be
     referred to as the "Stay Motion Hearing Transcript."  The Transcript of Motion for Preliminary Injunction,
27   Application [7]; Joint Motion to Intervene in Adversary Proceeding Filed by Eric D. Goldberg on Behalf of
     Lawrence Investments, LLC [24]; Motion to Expunge Lis Pendens Filed by Paul and Evy Paye, LLC Filed
28   by Eric D. Goldberg on Behalf of Lawrence Investments, LLC [23] Before the Honorable Gregg W. Zive,
     United States Bankruptcy Judge shall be referred to as the "Adversary Proceeding Hearing Transcript."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    The Bankruptcy Court did not Abuse its Discretion in Declining to Stay the Confirmation Order Pending Appeal.**

1.    Legal Standard for Appellate Review

On appeal, the denial of a motion for stay pending appeal is reviewed for abuse of discretion.  *See U.S. v. Peninsula Comms., Inc.*, 287 F.3d 832, 838 (9th Cir. 2002).  "The abuse of discretion standard on review of the bankruptcy court's order denying a stay encompasses a de novo review of the law and a clearly erroneous review of the facts with respect to the underlying issues."  *Dynamic Finance Corp. v. Kipperman (In re North Plaza)*, 395 B.R. 113, 119 (S.D. Cal. 2008).  The Bankruptcy Appellate Panel of the Ninth Circuit has long recognized that it is "important to the properly functioning bankruptcy court that the trial judge's rulings on stays pending appeal be disturbed only in the event of error or abuse of discretion."  *Wymer v. Wymer (In re Wymer)*, 5 B.R. 802, 808 (B.A.P. 9th Cir. 1980).

"Discretion . . . is abused when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court.  If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion."  *Lindy Bros. Builders, Inc. v. Am. Radiator, etc.*, 540 F.2d 102, 115 (3d Cir.1976) (quoting *Delno v. Market St. Ry.*, 124 F.2d 965, 967 (9th Cir.1942)) (emphasis added).

The Bankruptcy Court below thoroughly considered all of the facts before it and correctly applied the law to the facts of the case, and to the agreements at issue.  As the Bankruptcy Court below noted, the "[P]lan was fully briefed, argued, considered, [and] considered after the hearing," when it "went through all the findings and conclusions with counsel on the record."  *See* Stay Motion Hearing Transcript at p. 102.  The Paye Stay Motion presents nothing to suggest that the Bankruptcy Court's decision to confirm the Plan, or to deny a stay of the Confirmation Order, was "arbitrary, fanciful or unreasonable," so as to constitute an abuse of discretion.

2.     Legal Standard for Stay Pending Appeal

A "stay pending appeal is an extraordinary remedy."  *In re Station Casinos, Inc.*, 2010 Bankr. LEXIS 5438 at * 9 (Bankr. D. Nev. July 26, 2010).  In determining whether to issue a stay pending appeal pursuant to Bankruptcy Rule 8007, a court considers four factors: (1) whether the appellant is likely to succeed on the merits of the appeal; (2) whether the appellant will suffer irreparable injury if the stay is not granted; (3) whether no substantial harm will come to appellee as a result of the stay; and (4) whether the stay will do no harm to the public interest.  *Id.* at *8 (Jul. 26, 2010) (citing *In re Wymer*, 5 B.R. at 806).

"The four elements are conjunctive and each factor must be shown by a preponderance of the evidence."  *Station Casinos* at *10 (citing *Haskell v. Goldman, Sachs & Co. (In re Genesis Health Ventures, Inc.)*, 367 B.R. 516, 519 (Bankr. D. Del. 2007)).  In other words, if  "a party fails to establish one of the four prongs, a court may deny the requested stay."  *In re Polaroid Corp.*, 2004 WL 253477 at *1 (D. Del. Feb. 9, 2004) (citing *In re ANC Rental Corp.,* 2002 WL 1058196, at *2 (D. Del. May 22, 2002)). However, where the stay would provide the movant with the ultimate relief desired, the movant's burden of proof is even higher.  *See, e.g., iCall, Inc. v. Tribair, Inc.*, 2012 WL 5878389 at *4 (N.D. Cal. Nov. 21, 2012) (noting that, although the Ninth Circuit has not addressed this issue, a heightened standard "has been employed by other circuits, and the reasoning of those courts seems sound").[3]

Here, as discussed above, the maintenance of a stay of the Confirmation Order will grant Paye the ultimate relief it seeks – the undoing of the confirmed Plan. Accordingly, Paye must satisfy the heightened burden of proof.  Because Paye has not,

---

[3] *See also Edmisten v. Werholtz*, 287 Fed. Appx. 728, 731 (10th Cir. 2008) (stating that where an injunction would provide a movant "with substantially all the injunctive relief he seeks" it is a "disfavored injunction" and subject to a "heightened burden"); *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) ("[W]e have required the movant to meet a higher standard where. . .an injunction will provide the movant with substantially all the relief that is sought and the relief cannot be undone even if the defendant prevails at a trial on the merits."); *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993) ("The burden on the movant is a heavy one where, as here, granting the preliminary injunction will give [the movant] substantially the relief it would obtain after a trial on the merits.") (internal quotations omitted).

DLA PIPER LLP (US)
LOS ANGELES
WEST\278660984.3

1   and cannot, satisfy this burden, the Bankruptcy Court did not abuse its discretion in

2   declining to issue a stay of the Confirmation Order, and this Court should deny the Paye

3   Stay Motion.

4               3.    The Bankruptcy Court did not Abuse its Discretion in Finding that
                      Paye Failed to Meet its Burden to Show Likelihood of Success on
5                     the Merits.

6               a)    Paye has no Contractual Right to Exercise the Buyback
                      Option.
7

8   Courts in this jurisdiction have used several different formulations to articulate the

9   necessary showing for success on the merits.  "Regardless of how one expresses the

10  requirement, the idea is that in order to justify a stay, a petitioner must show, at a

11  minimum, that she has a substantial case for relief on the merits." *Leiva-Perez v. Holder*,

12  640 F.3d 962, 968 (9th Cir. 2011).  Paye failed to satisfy this burden.

13  At the heart of Paye's objection to confirmation of the Plan was Paye's alleged

14  right of first offer for the Fairwinds Estate, *i.e.*, the "Buyback Option."  Paye argues that it

15  should be permitted to exercise this option, and purchase either the Fairwinds Estate

16  itself, or some portion of the membership interests of 9898 Lake, which owns the

17  property.  However, under basic contract law, Paye is wrong when it argues that it is

18  entitled to exercise the Buyback Option under the Exchange Agreement.  Moreover,

19  Paye has never made an offer to buy the Fairwinds Estate, nor has Paye ever even

20  attempted to show that it could perform under any offer made.  For these reasons alone,

21  Paye is unlikely to succeed on the merits of its appeal of the Confirmation Order.

22  Pursuant to the Exchange Agreement, Paye contractually agreed with Parent that

23  Paye would trade (x) its 100% interest in 9898 Lake, for (y) a 6.19% interest in Parent.

24  In relevant part, the Exchange Agreement provides as follows:

25          *Buyback Option. If, following written approval by Hall, CR
            [Lake] Tahoe voluntarily elects to liquidate its membership
26          interest in Lake or sell Fairwinds to any party other than an
            affiliate, Paye shall have a right of first offer to negotiate a
27          reacquisition of the membership interests in Lake or the
            purchase of Fairwinds, either by purchase in cash or by
28          redemption of its membership interest in [Parent] or a*

*combination of the two. In the event CR Tahoe, [Parent] or [Debtor] default under a loan resulting in either a threat of foreclosure or an actual foreclosure of Fairwinds, such parties will not offer the lender a deed in lieu of foreclosure to Fairwinds without giving Paye the opportunity to acquire Fairwinds on terms mutually acceptable to the lender and Paye. [Parent] and its affiliates will give Paye notice of any proposals from any such lender that will avoid a foreclosure sale of Fairwinds and give Paye the opportunity to provide the required funds to the lender in exchange for an interest in Fairwinds. This provision shall survive the Closing of the transaction set forth in this Agreement.*

*See* Declaration Of John Paye In Support of [Injunction Motion] (Case 17-05040-GWZ ECF No. 5, "Paye Decl."), at Exhibit A, ¶8.

As shown above, the Buyback Option is very specific in describing the various events that can "trigger" it.  The Bankruptcy Court noted that the Exchange Agreement "provides for right of first offer if the appropriate triggers occur.  The triggering provisions are not ambiguous."  Adversary Proceeding Transcript at p. 48.  However, as shown below, and as the Bankruptcy Court found, none of these events have occurred.  Accordingly, Paye has no right to exercise the Buyback Option.

The first "trigger" for the Buyback Option is as follows:

*If, **[1]** following written approval by Hall, **[2]** CR Tahoe voluntarily elects to liquidate its membership interest in Lake or sell Fairwinds to any party other than an affiliate, **[then]** Paye shall have a right of first offer to negotiate a reacquisition of the membership interests in [9898] Lake or the purchase of Fairwinds, either by purchase in cash or by redemption of its membership interest in [Parent] or a combination of the two.*

Here, however, neither of the two conditions precedent for this first trigger has been satisfied.  First, Hall has <u>not</u> given its "written approval" for CR Lake Tahoe to do anything.  *See* Adversary Proceeding Transcript at p. 35 ("And there's no way written approval by Hall.  We know that.").  Second, even if Hall had given its written approval, CR Lake Tahoe has <u>not</u> "voluntarily" elected to either liquidate its interest in 9898 Lake, or to sell its interest in the Fairwinds Estate.  Rather, the proposed transfer of the Fairwinds Estate is being compelled under the Plan by CR Lake Tahoe's parent, the

1  Debtor.  In addition, CR Lake Tahoe has not elected to sell Fairwinds Estate to a non-

2  affiliate.  See Adversary Proceeding Transcript at p. 35 ("[T]here can be no doubt that

3  those . . . entities identified in the transfer document are all affiliates.  So it is not a sale

4  to any party other than affiliate.").  Consequently, under the express language of the

5  Exchange Agreement, Paye does <u>not</u> have "a right of first offer to negotiate a

6  reacquisition of the membership interests in Lake or the purchase of Fairwinds."

7  The second "trigger" for the Buyback Option is as follows:

8  *In the event **[1]** CR Tahoe, New Cal-Neva or [the Debtor],*
   *default under a loan resulting in either a threat of foreclosure*
9  *or an actual foreclosure of Fairwinds, **[then]** such parties will*
   *not **[2]** offer the lender a deed in lieu of foreclosure to*
10 *Fairwinds without giving Paye the opportunity to acquire*
   *Fairwinds on terms mutually acceptable to the lender and*
11 *Paye.*

12 Here, again, neither of the two conditions precedent for the second trigger has

13 been satisfied.  First, while the Fairwinds Estate is currently the subject of a foreclosure

14 proceeding, that proceeding is not the "result" of any default by CR Lake Tahoe, Parent,

15 or the Debtor.  Rather, the loan default that has "resulted" in the threatened foreclosure

16 of the Fairwinds Estate is the default by Mark Paye, who is the only obligor under the

17 Capital One loan secured by the Fairwinds Estate.  *See* Paye Decl., ¶25 ("Cal Neva and

18 its affiliates never assumed the Capital One Loan after closing the exchange

19 transaction.").  Second, even if the default that gave rise to the threatened foreclosure

20 had been committed by Parent, the Debtor, or CR Lake Tahoe, none of these parties

21 has offered the lender a deed in lieu.  Consequently, none of these parties is required to

22 give Paye "the opportunity to acquire Fairwinds on terms mutually acceptable to the

23 lender and Paye."

24 The third "trigger" for the Buyback Option is as follows:

25 *[Parent] and its affiliates will **[1]** give Paye notice of any*
   *proposals from any such lender that will avoid a foreclosure*
26 *sale of Fairwinds and **[2]** give Paye the opportunity to provide*
27 *the required funds to the lender in exchange for an interest in*
   *Fairwinds.*

28

1  Here, again, none of the triggering events have occurred. The lender on the

2  Fairwinds Estate, Capital One, has not made any proposal to Parent or its affiliates to

3  avoid a foreclosure sale of the Fairwinds Estate. Consequently, Parent and its affiliates

4  are not required to give Paye any "opportunity to provide the required funds to the lender

5  in exchange for an interest in Fairwinds."

6  Moreover, even if all of the triggering events had occurred, Paye has never shown

7  that it has the financial ability to close on a sale of the Fairwinds Estate. "An essential

8  basis for the equitable remedy in specific performance must be a showing by the plaintiff

9  of performance, or tender of performance, or ability and willingness to perform[.]" *Am-*

10 *Cal Inv. Co. v. Sharlyn Estates, Inc.*, 255 Cal.App.2d 526, 545 (1967). Because Paye

11 has never established (or even acknowledged that it must establish) that it has the

12 financial resources to actually buy the Fairwinds Estate, Paye has no right to specific

13 performance of the Buyback Option, and thus is unlikely to succeed on the merits of its

14 claim to enforce the Buyback Option.

15 Finally, even if all of the triggering events had occurred, and even if Paye had, or

16 could, prove that it had the ability to perform under the Buyback Option, as a legal

17 matter, the Buyback Option is simply not susceptible to the ultimate remedy that Paye

18 seeks: specific performance. Under California law, "an agreement, the terms of which

19 are not sufficiently certain to make the precise act that is to be done clearly

20 ascertainable," cannot be specifically enforced. Cal. Civ. Code §3390(e); *see, e.g.*, *Roth*

21 *v. Malson*, 67 Cal. App. 4th 552, 557-559, (1998) (in action by prospective buyer for sale

22 of real property, court declined to order specific performance where terms of alleged

23 contract were not definite enough to be enforceable). The mere fact (or allegation) of

24 nonperformance is not enough; the object of a specific performance claim is to procure a

25 performance by the defendant, and this demands a clear, definite, and precise

26 understanding of all the terms that must be exactly ascertained before the performance

27 can be enforced. *Patterson v. Reddish*, 56 Cal. App. 197, 201-202 (1922).

28 Here, the Buyback Option is far too vague to be specifically enforced. Among the

DLA PIPER LLP (US)
LOS ANGELES
WEST\278660984.3

many key details lacking in the Buyback Option are ones of timing, notice, and other transactional mechanics.  But most importantly, the Buyback Option is devoid of any clarity or specificity regarding the amount of, or any method for determining the amount of, the "required funds," or the nature, scope and extent of any "interest in the Fairwinds" allegedly to be acquired.   Accordingly, as the Bankruptcy Court found below, consideration of these facts compels the conclusion that Paye is unlikely to succeed on the merits.

b) <u>The Transfer of Fairwinds Estate Under the Plan Would not Constitute a Fraudulent Transfer.</u>

Paye argues that the Plan's requirement that the Debtor cause 9898 Lake to transfer the Fairwinds Estate upstream to the Debtor (and then ultimately to the Buyer) is a fraudulent transfer under California state law.  As shown below, this argument lacks merit, and is based on a misunderstanding of the facts and of fraudulent transfer law.

<u>First</u>, Paye lacks standing to invoke fraudulent transfer law.  As the Court knows well, fraudulent transfer law exists for the protection of creditors.  But Paye is not a creditor.  As the record before the Bankruptcy Court made clear, Paye was not listed as a creditor by either the Debtor or its Parent, and it never filed a proof of claim.  *See* Findings at ¶32(d).  While Paye is a party to the Exchange Agreement with the Debtor's *Parent*, Paye has no contractual privity with the Debtor, CR-Lake Tahoe or 9898 Lake.  Similarly, Paye has no lien or claim against the Fairwinds Estate itself.  Accordingly, even if the transfer of the Fairwinds Estate were a fraudulent transfer, Paye, which is not a creditor of any of the entities involved in that transfer, has no standing to invoke fraudulent transfer law.

Second, even if Paye were a creditor, there is no fraudulent transfer here.  As Paye acknowledges, there are essentially two types of prohibited transfers under California fraudulent transfer law:  actual ("intentional") fraudulent transfers, and constructive fraudulent transfers.  *See* Paye Stay Motion (ECF No. 5) at pp. 22-25 (citing Cal. Civil Code § 3439 *et seq.*).

1    To establish that an "intentional" fraudulent transfer has occurred, "intent to delay

2    or defraud is not sufficient; injury to the creditor must be shown affirmatively. [. . .] It

3    cannot be said that a creditor has been injured unless the transfer puts beyond [her]

4    reach property [she] otherwise would be able to subject to the payment of [her] debt."

5    *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 80 (2001).  But here, not only is the record

6    devoid of any evidence whatsoever regarding "bad intent," but Paye has not provided

7    any evidence that the result of the transfer would be to "put beyond its reach" any

8    property that it "otherwise would be able to subject to the payment of [its] debt."  While

9    Paye asserts that it has claims (which would be against the Parent) arising out of the

10   Exchange Agreement with respect to the Buyback Option, Paye has never posited any

11   theory by which the property conveyed, *i.e.*, the Fairwinds Estate, would be subject to

12   the claims Paye asserts.   Thus, there is no intentional fraudulent transfer here.

13   Similarly, Paye cannot establish the requisite elements of a constructive

14   fraudulent transfer either with respect to the Fairwinds Estate.  While California law and

15   the Uniform Fraudulent Transfer Act both contain slight statutory variations, it is beyond

16   cavil that at least two elements are required: (a) *insolvency*, and (b) a transfer for *less*

17   *than reasonably equivalent value*.  *See* Paye Stay Motion (ECF No. 5) at pp. 22-25

18   (citing Cal. Civil Code ¶3439 *et seq.*).  With respect to the "insolvency" requirement,

19   there is no evidence in the record that 9898 Lake is insolvent, or that it even has any

20   creditors other than Capital One.  And under the Plan, the Fairwinds Estate is being

21   transferred <u>subject to</u> (not free and clear) of the liens and claims of Capital One.  *See*

22   Order at ¶12.  Moreover, as shown in the Plan Documents approved by the Bankruptcy

23   Court, the Capital One loan will be <u>paid off in full</u> at the Closing of the Plan.  *See* Notice

24   of Submission of Transfer Documents, ECF No. 961-18 (*In re New Cal-Neva Lodge,*

25   *LLC*, Case No. 16-51282) at Exhibit R, p.2 of 6.

26   With regard to the "less than reasonably equivalent value" requirement, again,

27   Paye has failed to provide any evidence or argument on this point.  At the Confirmation

28   Hearing, the Bankruptcy Court found (with no contradictory evidence from Hall or Paye)

that "there is little or no equity value in the Fairwinds Estate."  Findings at ¶32(e).  Paye cannot seriously contend that 9898 Lake does not receive "reasonably equivalent value" for the transfer of an asset, when that asset has "little or no equity value."

The Paye Stay Motion provides no new facts or arguments with respect to any of Paye's objections to confirmation of the Plan.  The record is clear that Paye's objections were presented at the Confirmation Hearing, overruled by the Bankruptcy Court, presented again at the October 20 hearing where Paye requested that the Bankruptcy Court issue a stay pending appeal, and rejected again by the Bankruptcy Court.  Paye has failed to establish that the Bankruptcy Court, in making these rulings, abused its discretion.  Accordingly, this Court should find that Paye has failed to meet its burden to show that it is likely to prevail on the merits of its appeal.

4.     The Bankruptcy Court did not Abuse its Discretion in Finding that Paye Will Not Suffer Irreparable Injury Without a Stay.

"[M]ere financial injury . . . will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation."  *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984).  *See also In re Station Casinos*, 2010 Bankr. LEXIS 5438 at *14 ("An irreparable injury is one that is not remote or speculative, but instead is actual and imminent and for which money damages would not be adequate compensation.").  Paye has not made, and cannot make, any credible showing that it will suffer irreparable harm if the stay it requests is not granted, because any harm that Paye might suffer is simply a financial injury.

Paye's contention -- that it will suffer irreparable harm if the Fairwinds Estate is transferred under the Plan -- is premised not on evidence, but instead on a misconception of California law.  The Paye Stay Motion refers to California Civil Code section 3387, which states, "It is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation."  As an initial matter, it should be noted that what is at issue here is not an agreement to transfer real property; rather, what Paye contends it has is merely a *right of first offer* with respect

1   to the transfer of property.  As the Bankruptcy Court correctly noted, "[t]his is not an

2   agreement to transfer real property."  *See* Adversary Proceeding Transcript at p. 50.

3        Moreover, the statutory presumption that monetary damages are inadequate with

4   respect to real property transfers is not applicable here.  California Civil Code section

5   3387 clearly provides that "[i]n the case of a single family dwelling which the party

6   seeking performance <u>intends to occupy</u>, this presumption is conclusive.  <u>In all other</u>

7   <u>cases, this presumption is a presumption affecting the burden of proof</u>."  Cal. Civ. Code

8   §3387 (emphasis added).

9        Here, there is no evidence that Paye, a limited liability company, intends to

10   occupy the Fairwinds Estate; indeed, the record is clear that the Paye family (which

11   owns the LLC) only used the property intermittently for vacation purposes.  The

12   undisputed record likewise shows that, for Paye, the Fairwinds Estate was more of an

13   investment vehicle than anything else.  The Payes not only "traded" their interest in the

14   Fairwinds Estate to Parent in 2014, in exchange for a small percentage of the

15   membership interests in Parent, but at least two times before then, in 2009 and 2011,

16   Paye listed the Fairwinds Estate for sale.  As noted by the Bankruptcy Court, Paye "was

17   formed in 2014 for the purpose of the exchange agreement, and this was an economic

18   investment decision."  *See* Stay Motion Hearing Transcript at p. 107.  Indeed, the

19   Bankruptcy Court noted that the property was "not to be treated as anything unique at

20   that time, and in fact was traded for personal property, a 6.19% interest in an LLC."  *Id.*

21        Moreover, Paye was a proponent of several prior plans of reorganization for

22   Debtor and Parent.  Pursuant to two of these Paye-supported plans, the Fairwinds

23   Estate would have been transferred to a new entity, much like it is being transferred

24   under the confirmed Plan.  *See* ECF No. 505, at 10 ("The Plan Proponents have

25   negotiated a new agreement with Paye to include the Fairwinds Estate in the Debtors'

26   project."), and ECF No. 233 in *In re Cal Neva Lodge, LLC*, Case No. 16-51281, at 12

27   ("Paye has agreed to the terms of the Plan proposed by the Plan Proponents, and if

28   such Plan is confirmed will not pursue litigation against the Plan Proponents.").

-14-

1    Thus, having (1) twice attempted to "cash out" its interest in the Fairwinds Estate
2    by listing it for sale, (2) successfully traded its interest in the Fairwinds Estate for a small
3    membership interest in the investment entity (Parent) that was then attempting to
4    renovate the Resort, and (3) consented to the transfer of the Fairwinds Estate under a
5    different plan of reorganization, Paye cannot seriously contend now that its interest in
6    the Fairwinds Estate is anything other than economic.

7    Unlike primary residences, courts have held that monetary damages would
8    adequately compensate plaintiffs for the loss of an investment property. *In Ribeiro v.*
9    *Bank of America, N.A.*, 2012 WL 727130 (D. Nev. March 6, 2012), the United States
10   District Court for the District of Nevada stated that, in that case, "the properties at issue
11   are investment properties rather than residential properties. Therefore, the threatened
12   economic loss 'is compensable in large part, if not entirely, in damages. 'Mere financial
13   injury . . . will not constitute irreparable harm if adequate compensatory relief will be
14   available in the course of litigation.'" *Id.* at *2 (quoting *Geneva Ltd. Partners v. Kemp*,
15   779 F. Supp. 1237, 1241 (N.D. Cal. 1990)). *See also Park v. U.S. Bank Nat. Ass'n,*
16   2011 WL 1432034 at *2 (S.D. Cal. April 13, 2011) (denying preliminary injunction and
17   stating that the "Plaintiffs have failed to demonstrate that, if they were to ultimately
18   prevail in this litigation, monetary damages would not adequately compensate them for
19   the loss of their investment properties"): *Breinholt v. Popular Warehouse Lender*, 2010
20   WL 4922341 at *1 (D. Idaho Nov. 29, 2010) ("[T]he record suggests that the Tanglerose
21   residence is an investment property. . . Thus, Plaintiffs do not face the loss of their
22   home, but rather only face financial injury, which is compensable in large part, if not
23   entirely, in damages.") (internal quotations omitted).

24   Accordingly, even if Paye is successful on the merits of its claims, it is not entitled
25   to injunctive relief because it has not shown that it will suffer "immediate irreparable
26   harm" if the Fairwinds Estate is transferred.

27

28

5.      The Bankruptcy Court did not Abuse its Discretion in Finding That the Balance of Equities did not Favor Granting a Stay.

"In considering the balance of equities, a district court has a duty to 'balance the interests of all parties and weigh the damage to each.'" *Overstreet ex. Rel. N.L.R.B. v. Gunderson Rail Services, LLC*, 587 Fed.Appx. 379, 381 (9th Cir. 2014) (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980)). Moreover, in "exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). The Bankruptcy Court correctly balanced the interests of all parties and paid particular regard to the public consequences of a stay:

> No substantial harm will come to the appellee as a result of the stay. . . *I think there's tremendous harm that would come to the appellee and the creditors of this estate. They could realize no recovery at all.* And what I'm troubled by . . is here, there is a dispute regarding an asset that may have no value, and at best has very little value, that's being – attempted to being utilized to frustrate a plan that will provide recovery for the parties in interest when there is absolutely no indication that there is any other source of funds, especially in light of the failed attempts to market, auction, and sell this property previously."

*See* Stay Motion Hearing Transcript at pp. 107-08 (emphasis added).

Here, as set forth in detail in the Hall Opposition, the damage that the Plan Proponents, the Debtor, and the Debtor's creditors and bankruptcy estate would suffer as a result of a stay, greatly outweighs any potential damage that Paye might incur without a stay. Accordingly, the Bankruptcy Court did not abuse its discretion in finding that the balance of the equities did not favor granting a stay.

6.      The Bankruptcy Court did not Abuse its Discretion in Finding that a Stay is not in the Public Interest.

As set forth more fully in the Hall Opposition, there is a recognized public interest in the swift and just resolution of claims against bankruptcy debtors, and the finality of

DLA PIPER LLP (US)
LOS ANGELES
WEST\278660984.3

1  bankruptcy decisions.  *See* Hall Opposition at pp. 16-17 (citing cases). The Bankruptcy

2  Court properly considered these interests in determining that a stay was not in the public

3  interest:

4          •   "Well, there is a public interest in maximizing the value
5             of the assets in a bankruptcy context to pay creditors,
           and that's what's happening.  And as I indicated, I
           believe the stay would preclude that from occurring."
6             Stay Motion Hearing Transcript at p. 106.

7          •   "I believe that there is a public interest in maximizing
           the value of this estate, to provide a benefit to all
8             parties, especially when I think the Payes still have
           their contractual remedy."  *Id.* at p. 108.
9

10          •   The Plan "incorporates the highest and best
           opportunity to maximize the value of the estate's
11             assets for all constituents at this time, or any time in
           the foreseeable future."  Findings at ¶8 (emphasis
12             added).

13       The Bankruptcy Court correctly considered the public interest in declining to issue

14  a stay.  The Bankruptcy Court's factual findings -- that a stay would not be in the public

15  interest -- were reasonable and strongly supported by the evidence in the record.

16  Accordingly, the Bankruptcy Court did not abuse its discretion.

17  **III.**    **CONCLUSION**

18       For the foregoing reasons, the Plan Proponents respectfully request that the

19  Court decline to extend the stay of the Confirmation Order that is already in place.  As

20  shown above, Paye lacks standing to appeal the Confirmation Order, because Paye is

21  not a party in interest.

22       However, even if Paye were a party in interest, the Bankruptcy Court did not

23  abuse its discretion in declining to order a stay pending resolution of Paye's appeal.

24  Paye has not shown that it would be successful on the merits of an appeal because the

25  //

26  //

27  //

28  //

1   Buyback Option was not triggered.  In addition, a stay is not in the public interest, the

2   balance of the equities tips in the Plan Proponents' favor, and Paye will not suffer

3   immediate irreparable damages by implementation of the Confirmation Order.

4

5   Dated:  October 31, 2017              By  /s/ Eric Goldberg

                                          **DLA PIPER LLP (US)**
6                                         ERIC GOLDBERG

7                                         Counsel to
                                          Lawrence Investments, LLC
8

9

10  Dated:  October 31, 2017

                                          By  /s/ Courtney Miller O'Mara
11                                        Courtney Miller O'Mara (NV Bar No. 10683)
                                          FENNEMORE CRAIG, P.C.
12                                        300 E. 2nd Street
                                          Reno, NV 89501
13                                        Telephone:  (775) 788-2200
                                          Facsimile: (775) 786-1177
14                                        Email:  comara@fclaw.com

15                                        AND

16                                        By  /s/ Shirley S. Cho
                                          Shirley S. Cho ((*pro hac vice application*
17                                        *forthcoming in compliance with LR IA 11-2*)
                                          Pachulski Stang Ziehl & Jones LLP
18                                        150 California Street, 15th Floor
                                          San Francisco, CA 94111
19                                        Telephone:        (415) 263-7000
                                          Facsimile:        (415) 263-7010
20                                        E-mail:    scho@pszjlaw.com

21                                        Counsel for the Official
                                          Committee of Unsecured Creditors
22

23

24

25

26

27

28